MARY E. ROBERTS v. W. P. ROBERTS and others.

*Confirmatory Evidence—Declarations of deceased persons.*

1. Proof that a witness made a statement in regard to the matter in dispute consistent with that testified to on the trial, is admissible as confirmatory evidence.

2. Upon an issue relating to the contents of a lost or destroyed deed, the acts and declarations of a deceased person tending to show the extent of his title under the deed and that by it an estate of inheritance passed, are inadmissible in evidence ; but may be received when they qualify the possession, or are explanatory thereof.

3. Such declarations merely narrative of a past occurrence cannot be re_ ceived as proof of the existence of such occurrence.

(*Johnson* v. *Patterson,* 2 Hawks, 183 ; *Jones* v. *Jones,* 80 N. C., 246 ; *Bullinger* v. *Marshall,* 70 N. C., 520 ; *McRae* v. *Lawrence,* 75 N. C., 289 ; *Hilliard* v. *Phillips,* 81 N. C., 99, cited and approved.)

SPECIAL PROCEEDINGS for Dower commenced in the Pro-

bate Court, and tried at Fall Term, 1879, of CHOWAN Superior Court, before *Gudger, J.*

The facts appear in the opinion. The court below rendered judgment for the plaintiff and the defendants appealed.

*Mr. W. A. Moore,* for plaintiff.

*Messrs. Pruden & Shaw, Whedbee* and *E G. Haywood,* for defendants.

SMITH, C. J. John Roberts in his life-time was in possession of a tract of land lying in Chowan county, conveyed to him by his deceased father, Mills Roberts, and died in March, 1878, without issue, and leaving a will in which his personal property only is disposed of. The plaintiff, his widow having dissented from the will brings this action against the defendants, who are the mother and sisters and the issue of a deceased sister of the testator, and also the children and grand-children of the said Mills Roberts, and as such the heirs-at-law of both, the husbands of such as are married being also parties, to obtain an allotment of dower in her husband's lands and among them, the Long Lane farm, alleging a seizin of an estate in fee in him. The defendants controvert this allegation and say that the deed from his father conveyed to said John a life estate only in said farm, and that the reversion descended from the said Mills to them. The deed was never registered and has been destroyed or lost, and the sole issue extracted from the pleadings and submitted to the jury related to its contents and was in these words: "Was John Roberts seized in fee simple of the Long Lane farm and fishery during coverture with the plaintiff?"

At the trial, H. A. Gilliam, a witness for the plaintiff, testified that he examined a deed from Mills to John Roberts

for this land, dated, according to his recollection, in 1867, and that in terms it conveyed an estate in fee.

In answer to this evidence, M. L. Eure, the father of the infant defendants, was introduced by the defendants and stated that he examined a deed from Mills to John Roberts, exhibited to him by the latter shortly after his father's death, and who said it had been shown to the witness Gilliam also, dated as he remembers in 1857, and that the deed had no words of inheritance and vested in the said John only an estate for his life.

In this conflict of evidence between the two witnesses as to the terms of the deed and its legal operation and effect, and to sustain the credit of the latter, the defendants proposed to prove by another person that on the day when the witness, Eure, saw the deed, he made a statement of its provisions conforming to his testimony now given. The evidence was not admitted, and to this ruling the defendants make their first exception.

While the witnesses assign different dates to the deed exhibited to them, and if there were two different instruments no repugnancy in their statements would exist, yet if the deed shown to Eure by the testator was, as he then declared, the same seen by Gilliam, in the absence of any evidence that the latter had seen but one deed, the jury might well infer the execution of a single conveyance by the original owner, and hence the conflict in the evidence would arise. This was a matter for the jury to pass on, and is sufficient to let in the confirmatory evidence, if competent to be heard, in support of the credit of the witness.

The admissibility of similar and concurring statements previously made by a witness to sustain his assailed testimony and strengthen confidence in the accuracy of his memory and the truthfulness of his evidence, has been so often declared in numerous cases before the court from *Johnson* v. *Patterson*, 2 Hawks, 183, decided in 1822, down to the

recent case of *Jones* v. *Jones*, 80 N. C., 246, and the rule so thoroughly settled and so often recognized and acted on, as to make a citation of authorities entirely needless.   We do not propose now to review them because in England and in New York, and perhaps in other states this species of evidence is received under restrictions and modifications not recognized in this state.   We will only say that in *Bullinger* v. *Marshall*, 70 N. C., 520, as in our case, the testimony of the respective parties was in direct conflict, and to corroborate that of the plaintiff, he was allowed to show correspondent representations made shortly after the facts occurred, and PEARSON, C. J., says: "We concur with His Honor in the opinion that this testimony was admissible.   Before the late statute by which parties to an action are made competent as witnesses, it was a *settled rule of evidence that when a witness was impeached, he might be corroborated by proving that soon after the matter occurred, he made the same statement in regard to it.*   See also *McRae* v. *Lawrence*, 75 N. C., 289, and *Jones* v. *Jones, supra.*   There is, therefore, error in the rejection of this evidence, which entitles the defendants to a *venire de novo.*

The second exception of the defendants is to the receiving in evidence the acts and declarations of the testator while in possession of the land, tending to show the nature and extent of his title under the deed, and that by it an estate in fee passed.   The exception must be sustained.   The acts and declarations accompanying possession in disparagement of the declarant's title or otherwise qualifying his possession are received as part of the *res gestæ.*   But when declarations, offered in evidence, are merely *narrative of a past* occurrence, they cannot be received as proof of the existence of such occurrence."   1 Greenl. Ev , §§ 109, 110.

The conduct and declarations of the testator were offered, upon an issue relating solely *to the contents of a lost or destroyed deed,* and in enlargement of his own estate, and to

this end in proof of a pre-existing fact not connected with or explanatory of his possession. Moreover they tend to show not so much the words contained in the conveying instruments, as his own conception of their legal effect. The evidence was incompetent for any such purpose.

In the recent case of *Hilliard* v. *Phillips*, 81 N. C., 99, the declarations of the bargainor who remained in possession after executing a deed absolute in form to his brother, exercising acts of ownership as before, that the deed was fraudulent were held competent to prove fraud in the making of the deed, and a *continuous fraudulent possession* under it. The doctrine thus declared does not embrace such evidence as was admitted in the present case. There is error also in receiving it. We therefore declare there is error, and there must be another trial, and it is so ordered. This will be certified.

Error.                                           *Venire de novo.*