J. W. GIDNEY, Adm'r, v. ANN E. MOORE and others.

*Executors and Administrators—Evidence, declarations, parol trust —Privileged Communication—Married. Women—Domicil.*

1. An intestate entered into a contract of purchase of land, and paid part of the price, and the plaintiff administrator upon paying the balance procured title to himself in his representative capacity. In a pro-

GIDNEY v. MOORE.

ceeding for license to sell the land for assets to pay debts, the widow set up an equitable claim to a part thereof, alleging that the same was paid for by her husband with her money under an agreement to return the money, and asks that title be made to her as a means of repayment; *Held* competent for the widow to prove declarations of the intestate husband (while in possession of the land) that he paid for it with funds belonging to her. And this, notwithstanding the objection made that the administrator in seeking to subject the land represents the creditors.

2. The rule announced in *Shields* v. *Whitaker*, 82 N. C., 516, in reference to charging land with a parol trust, approved.

3. Matter not appearing to be within the scope of professional consultation, but referring to other objects, will not be excluded as a privileged communication.

4. A general objection to obnoxious evidence will be sustained, if upon any ground the evidence should be rejected; but where the ground of an exception can be inferred from the record, another cannot be assigned here—the ground of an exception being a part of the exception itself.

5. Personal property given to a married woman is received under the law of her actual domicil, and not of the matrimonial domicil.

(*Bridgers* v. *Bridgers*, 69 N. C., 451; *Williams* v. *Kivett*, 82 N. C., 110; *Roberts* v. *Roberts*, *Ib.*, 29; *Perry* v. *Jackson*, 84 N. C., 230; *Bryan* v. *Morris*, 69 N. C., 444; *Murphy* v. *Ray*, 73 N. C., 588; *Morgan* v. *Bunting*, *ante*, 66 and cases cited; *Mulholland* v. *York*, 82 N. C., 510; *Shields* v. *Whitaker*, *Ib.*, 516, cited and approved.)

SPECIAL Proceeding to sell land for assets transferred, on issues raised, and heard at Fall Term, 1881, of CLEAVELAND Superior Court, before *Avery, J.*

J. L. Moore in his life-time entered into a contract with one Wilson for the purchase from him of a tract of land and gave his note therefor in the sum of $1,410.36, bearing date on January 1st, 1867, and of which he paid the larger portion previous to his death in 1874. The plaintiff, his administrator, has since discharged the residue of the debt and caused the land to be conveyed to himself in his representative capacity. The estate being found to be insolvent, he institutes the present action against the defendants, the widow and heirs at law, for license to sell the descended

lands for assets to be used in the course of administration, including the "Wilson tract" to which he had himself taken title. The controversy raised by the answers, and more particularly by that of the defendant, Ann E. Moore, the surviving wife, is in regard to this land.

She sets up an equitable claim thereto, alleging that whilst the intestate and herself were residing in the state of Alabama, her father gave her for her sole and separate use the sum of $3,000 in gold coin, which she took into possession and brought with her on their removal to this state, and deposited the same in bank, where it remained for a considerable time; that she subsequently loaned one-half of the amount to the intestate on his agreeing to account to her therefor, and later let him have the residue on a special contract that he should buy the "Wilson land," pay for it, and have the title conveyed to her as a means of repayment to her; that he did bid off and purchase the land, but died before completing payment or taking any deed therefor; and that the intestate held possession and always recognized and admitted her right to the property.

The law of Alabama, at the time of the donation, secured to a married woman as her separate estate and free from liability for the debts of the husband, all property held by her previous to marriage or acquired afterwards, and constituted the husband a trustee with the right to manage the same and use the rents and profits, but they are not made subject to the claims of his creditors.

Three issues were submitted to the jury which, and the answers to each, are as follows:

1. Was the "Wilson tract" bought by the intestate for his wife under an agreement to return the money so belonging to her separate estate and placed in his hands, by his paying the purchase money for the same? Yes.

2. What portion of the purchase money did the intestate

pay under the agreement?   He paid all except what the plaintiff has paid since his death.

3. What sum was paid by the plaintiff?   $225.90, on July 14th, 1875.

Thereupon it was adjudged that the said Anne E. had an equity in said land, and the plaintiff held the legal estate as trustee, and that upon her repayment of the sum advanced by the plaintiff, as administrator, with interest, he convey the same to her in fee simple, and pay the costs of the action.   From this judgment the plaintiff appealed.

*Messrs. Hoke & Hoke, Bynum & Grier* and *Battle & Mordecai* for plaintiff.

*Mr. D. Schenck,* for defendants.   ·

SMITH, C. J.   The exceptions presented in the record are to the rulings in the admission and rejection of evidence and to the denial of instructions asked to be given to the jury.

1. The defendant was allowed to prove declarations made by the intestate before his purchase that he had moneys belonging to his wife's separate estate and proposed to invest them in the " Wilson land," and while in possession after his contract of purchase that he had paid for it out of her separate estate ; that her father had given her $1,500 which he had been allowed to use in consequence of an understanding with her to buy the " Wilson land " for her; and that the donation was in gold.

There was other corroborative testimony not necessary to be stated in elucidating the exception.

It is a well settled rule of evidence that whatever may be shown, and by whatever mode of proof, to charge a person with liability while living, is equally competent to fix that liability upon his estate in the hands of the representative devisee or heir.   The death of the party cannot operate to

exclude admissions he may have made, when the action to enforce a claim against his estate is prosecuted against his administrator or executor. The objection interposed to the reception of the intestate's admissions in the present case, is based upon the fact that the plaintiff in pursuing the land as a fund to be applied to debts, represents the creditors, whose right to have satisfaction out of the debtor's property, ought not to be impaired by declarations which he may have made in the interest of members of his own family for whom he is bound to provide. It is true that the statute gives the administrator, upon an ascertained insufficiency of the personal estate, the right to pursue and convert the *real estate* into assets to meet the liabilities of the intestate, even when he may have made a fraudulent alienation to others, while the estoppel obstructs his recovery of personal estate that may have been assigned in fraud of creditors, as in law the administrator stands in the shoes of his intestate, and neither can impeach the assignment for that cause. See *Burton* v. *Farinholt, ante,* 260. It was necessary to confer this power when recourse is had to land, because it is only through the statutory mode of procedure that it can be reached and subjected to the payment of debts, while the creditors themselves can appropriate personal property, thus disposed of, by an action against the fraudulent assignee as an executor *de son tort* and charge him with its value. While it is true the successful assertion and enforcement of the defendant's equity will diminish the resources out of which the creditors are to be paid, and they have an indirect interest in its defeat by reason of the insolvency of the debtor, it is equally true as to the results of the prosecution of any demand, which may enlarge the amount to be provided for, and correspondingly lessen the *pro rata* distribution of the assets, and yet in the latter case the right to have proof of the intestate's admissions cannot admit of question. Consequences, the same, follow the increase in the amount of liabilities, as

the reduction of the fund with which they are to be provided for.   Why shall any distinction be allowed and the same rule not alike prevail in both cases?   If the estate were solvent and ample, the declarations as evidence to charge it would be received, and how can insolvency impair the rights of the claimant, or deprive her of the means of establishing them?   The wife stands in the same position as a creditor, and may sustain her equity, for which there has been a full consideration in the use of her money given, by such proofs as are available to other creditors in sustaining their demands.   In respect to this controversy, the relations of the husband and wife are antagonistic, and his admissions of her right to the land of which he was in possession and in disparagement of his own, are as truly in law against his interest as if made on behalf of a stranger. The marital relation, and the interest and sense of moral duty he may have felt when the repeated declarations came from his lips, are circumstances affecting the credit to be given them and their value as evidence; but to exclude the maltogether is entirely insufficient.

It is insisted in argument here that the testimony of the witness, H. Cabaniss, should have been ruled out on the further ground that it embraced a confidential communication, made to him professionally, while the intestate was consulting him about business, the bankrupt act and his involvements in Tennessee.   If the disclosure was of this kind, and the information thus obtained, it would not be allowed to be given in evidence and it would have been error to admit it.   But to this several answers suggest themselves:

1. The matter testified to does not appear to have been within the scope of the professional consultation, which had reference to other objects, and it is plain that such are not within the protection of the rule.

2. The nature and character of the evidence, as a privi-

leged communication to an attorney, are not assigned as a ground for its repression.

3 The objection to similar testimony from the next witness examined and who sustained no such relation to the deceased, was made and could be made only upon the ground of its general incompetency, which has already been considered, and no distinction between the witnesses in this regard is suggested. It will be observed, also, that when the defendant proposed to show declarations of the intestate when in possession, and to trace the fund used in the purchase, a general objection is interposed to the admission of any of the evidence, it not appearing that the witness had been a legal adviser of the deceased, or then even suggested as a reason for its exclusion. The fact came out after the objection was overruled and the witness began to deliver his testimony. Such is the representation contained in the record, and a fair and reasonable interpretation is that a common objection was made to the *testimony* itself proceeding from either witness, and not to any personal *disability* from a previous professional employment on the part of one more than the other, to give in the testimony. It would be a surprise then to permit an exception not applicable to the proof, when offered and opposed, but growing out of the testimony which the witness then proceeded to give in, and to which no objection was made; and although a general objection to obnoxious evidence will be sustained when no ground has been assigned, if upon any ground it ought to have been rejected, yet when the ground of the objection can be fairly inferred from the record as understood by the parties at the time, another cannot be assigned in the reviewing court. The ground of exception is to be deemed on appeal a part of the exception itself. *Bridgers* v. *Bridgers*, 69 N. C., 451 ; *Williams* v. *Kivett*, 82 N. C., 110. See also *Barnhardt* v. *Smith, ante*, 473, as to exceptions too large and comprehensive.

2. The declarations of the deceased offered by the plaintiff, not for the purpose of contradiction, but to show the facts declared, as hearsay or narrative, were properly refused. 1. Greenl. Evi., § § 109, 110; *Roberts* v. *Roberts,* 82 N. C., 29; *Perry* v. *Jackson,* 84 N. C., 230.

3. The objection to the competency of the defendant to prove the donation and delivery to her of the gold coin by her father, since deceased, derives no support from section 343 of the Code, which is wholly inapplicable. *Bryan* v. *Morris,* 69 N. C., 444; *Murphy* v. *Ray,* 73 N. C., 588; *Shields* v. *Smith,* 79 N. C., 517; *Hawkins* v. *Carpenter,* 85. N. C., 482; *Morgan* v. *Bunting, ante* 66.

4. The court was asked and refused to charge that the marriage having taken place in Louisiana and the common law presumed to prevail there, that law would govern the subsequent acquisitions of property, although the parties had removed out of that state, and were residing in Alabama, when the gift was made, and hence the money, *instanter jure mariti,* belonged to the husband. While we do not assent to the proposition that the common law prevails in Louisiana, when we historically do know from what nation its territory was acquired, and what general system of jurisprudence was then in force, it is plain the money given the wife in Alabama is received under the provisions and conditions of the law of that domicil. "Where there is a change of domicil," in the words of Mr. Justice STORY, "the law of the actual domicil and not of the matrimonial domicil, will govern, as to all future acquisitions of movable property; and as to all immovable property, the law *rei sitæ.* Story Conf. Laws, § 184; 2 Kent. Com. 133, note A, 3d Ed.

5. A series of instructions were asked to be given to the jury and declined, which may be embodied in a single proposition—that the evidence was legally insufficient to raise a trust or warrant the jury in finding the affirmative of the first issue. The court left the evidence to the jury,

directing them that the defendant must satisfy them of the affirmative of that issue; that under the law the defendant had a separate estate in the fund, and that the intestate agreed with her, at or before the time of purchasing the land, that he would buy it for her and repay, by advancing the purchase money, the sum received from her personal estate, otherwise their verdict must be in the negative.

The evidence was properly left to the jury, and of its sufficiency to charge the land with a parol trust, we will only refer to the recent cases where the subject is fully discussed. *Mulholland* v. *York*, 82 N. C., 510 ; *Shields* v. *Whitaker, Ib.* 516.

It must be declared there is no error, and this will be certified to the superior court of Cleaveland for further proceedings according to law as declared in this opinion.

No error.                                     Affirmed.