The plaintiff alleged possession in himself of the lands described in the complaint and deduced title from John C. Blake, trustee, to whom one S. T. Carrow had executed a deed in trust with power of sale. The lands had been bought by Carrow in 1872 at execution sale against Noah W. Guilford, issued on judgments rendered prior to 1868. The defendant asserted title to the land upon which the trespass was alleged to have been committed. In his further defense the defendant alleged "that during or about the months of April or May, 1872, while the said S. T. Carrow was in possession of the lands described in the complaint, excepting that claimed by this defendant, the said Carrow and this defendant had their lands surveyed and agreed upon the lines separating their lands and had the same distinctly marked. That from that time until the beginning of this suit the said Carrow (17) and those claiming under him have always acknowledged and recognized the said line, and have asserted to claim to the lands claimed by this defendant."
On the trial the plaintiff, in locating his deed covering the locus inquo, was permitted by the court, after objection by the defendant, to show that a sweet-gum at the edge of Jacob's Creek was by general reputation in the neighborhood known as Bond's corner. This is the first error complained of.
The defendant claimed under one G. W. Guilford, trustee for G. A. Guilford. Carrow in 1872 had a survey of the lands claimed by him, and on that survey Carrow marked a gum in the southern line of his (Carrow's) land, as fixed by his (Carrow's) deed, and marked a line from the gum north, at the time saying that the gum was the corner of Graham Guilford's land, and that line was the line between them. Upon objection by plaintiff this testimony was ruled out, and defendant excepted. *Page 13 
Defendant offered to show that S. T. Carrow, under whom plaintiff claimed, prior to the conveyance by Carrow, agreed to execute a deed to Graham Guilford, but that in consequence of Carrow's being involved he thought it best that the deed should be made by N.W. Guilford alone. Upon objection by plaintiff this testimony was excluded.
Defendant offered to show that he cut and carried a raft of timber off the land in controversy to Washington, and that Paul Lincke prevented a sale of this raft. This with the view of showing damages. Upon objection, testimony excluded, and defendant excepted. There was no evidence that Lincke was the agent of plaintiff, and the court excluded the evidence.
Defendant requested the court to hold that it was necessary (18) for the plaintiff to show an advertisement and sale under the deed in trust to Blake, independent of the recitals in his deed. The court declined to so hold, and defendant excepted.
Defendant asked the court to charge the jury that the Sheriff's sale was void, for that no homestead was laid off. The court declined so to do, as the judgments under which the land was sold were on debts created prior to 1868, or some of them were. Defendant excepted.
The defendant relied upon color of title and possession to defeat plaintiff's title.
The court charged that there was no sufficient evidence of possession for such a length of time as would ripen defendant's color of title into title. Defendant excepted.
This land was all woods land; it was not cleared, fenced or cultivated.
The defendant testified to the following acts, which were alleged to show possession sufficient to ripen color of title into title.
In 1872, a survey of the land; in 1873, Colonel Carrow cut timber on the land from the latter part of the summer until nearly Christmas, under Guilford; in 1874, one Watt Lewis, by authority of Guilford, got two trees for boards; in 1875, Eli Moore made boards on the land; in 1876, John Brown got some large trees for ship timber; in 1877, Simon Whitehurst worked up two trees, cut down by Brown, into boards; worked on them off and on for four weeks; in 1878, in the spring, a road was surveyed across the land, and in the fall partly cut out; in the fall of 1879, Mack Smith got some staves on the land; in 1880, the defendant got oak timber; he began in January, got some in January, February, and March, and then quit and began cutting again in September; paid one-fourth rent, and the rent amounted to ten dollars; in 1881, Peyton Taylor worked on the land to the same (19) extent as the defendant had done in 1880; in 1882, defendant got four sills for a ginhouse off the land; "in the fall of 1883, I rented *Page 14 
some ginhouse timber to one C. W. Bonner; he paid me two dollars rent; in 1884, one Rollins got some flat knees; worked off and on from summer until about September; in 1885, the defendant bought the land, built a cabin on the land and occupied it for his hands in getting off timber."
The suit was brought in 1886.
This is all of the evidence of possession, except that during the fall and winter of every year the defendant would haul a load of lightwood knots and dead tree tops, and occasionally cut up a dead pine stump or tree, cutting in all fifteen or twenty trees.
The court charged the jury that there was not sufficient evidence of possession for a sufficient length of time to defeat plaintiff's title.
There was verdict for the plaintiff, and from the judgment thereon the defendant appealed.
In the discussion of the admissibility of evidence by reputation and of hearsay evidence, in Dobson v. Finkley, 53 N.C. 499,Chief Justice Pearson said: "It is settled law that both kinds of evidence are competent in questions of private boundary in this State. In the latter, to-wit, hearsay evidence, it is necessary as a preliminary to its admissibility to prove that the person whose statement it is proposed to offer in evidence is dead; not on the ground that the fact of his being dead gives any additional force to the credibility of his statement, but on the ground that if he be alive he should be (20) produced as a witness, whereas it is manifest that in respect to evidence by reputation this preliminary question cannot arise." Harris v. Powell, 3 N.C. 349; Hartzog v. Hubbard,19 N.C. 241.
The rule that testimony by reputation was competent, under any circumstances, to locate the boundaries of land was admitted to be a departure from the English doctrine, which is still adhered to in many of the States, notably by the Court of Massachusetts; but the fact that the country had been recently settled and was still but sparsely inhabited and that consequently monuments of title could not be so well known or firmly established as in an older country seems to have been ample justification for a modification which adapted the rule to the reason. The fact that the courts of Tennessee and of Kentucky, where the conditions were similar, followed the ruling in this State is additional evidence of the necessity for the change. Sasser v. Herring, 14 N.C. 342; *Page 15 Bond v. Talbott, 1 Cooke, 142; Smith v. Arwells, 2 Littell, 159; 1 Greenleaf, sec. 145, note on pp. 194 and 195.
The newly adopted principle was subject, however, to the single restriction that it was not competent to show a general reputation that the premises claimed were located within the limits of certain grants, without any evidence as to monuments of title, though the claimant was permitted to prove that particular landmarks, such as trees, streams or lines, constituted, according to the general report, parts of his boundary, or that he held possession with the acquiescence of others up to a known line.Mendenhall v. Cassels, 20 N.C. 43.
The exception, therefore, to the testimony of the witness (21) Whitehurst that there was a general reputation in the neighborhood that the sweet-gum at 12 was Bond's corner is without merit.
"Occasional acts of ownership, however clearly they may indicate a purpose to claim title and exercise dominion over land, do not constitute a possession that will mature title." Ruffin v. Overby, 105 N.C. 78;Asbury v. Fair, 111 N.C. 251; Hamilton v. Icard, 114 N.C. 532. A possession that ripens into title must be such as continually subjects some portion of the disputed land to the only use of which it is susceptible, or it must be an actual and continuous occupation of a house or the cultivation of a field, however small, according to the usages of husbandry. McLean v. Smith, 106 N.C. 172; Bynum v.Carter, 26 N.C. 310; Tredwell v. Riddick, 23 N.C. 56; Cox v. Ward,107 N.C. 507; Hamilton v. Icard, supra. The test is involved in the question whether the acts of ownership were such as to subject the claimant continually during the whole statutory period to an action in the nature of trespass in ejectment instead of to one or several actions of trespass quare clausum fregit for damages. Hamilton v.Icard, supra, pp. 536 and 537; Osborne v. Johnston, 65 N.C. 22;McLean v. Smith, supra; State v. Suttle, 115 N.C. 784; Boomer v.Gibbs, 114 N.C. 76. The digging of ditches and constructing roads through swamps for the purpose of getting shingles, when it appeared affirmatively that the swamp lands were susceptible of no other use, was such an assertion of ownership as subjected the occupant to an action of possession, as was the continuous getting of turpentine on a pine barren worthless for any other purpose (Tredwell v. Riddick,23 N.C. 56; Bynum v. Carter, 26 N.C. 310); and these two cases mark the extreme limit to which this Court has gone. The testimony in this case was similar to that offered in Ruffin v. Overby and several others that we have cited. The acts of dominion consisted of cutting board timber some time during a particular year on a (22) *Page 16 
piece of woodland; but there was no evidence to show that they were continuous or, if they were, that the land, though while covered with timber it was not susceptible to other use, might not have been cleared and cultivated, regardless of its capacity for profitable production. There was no error, therefore, in instructing the jury that such acts were not an assertion of the right that would mature title.
The sweet-gum at 12 had, it seems, been marked by S. T. Carrow as a pointer to show where a stake called for as a corner was located. The marking was done in the progress of a survey made by one S. T. Roberson, to determine the location of the line between Carrow's land and that of Noah W. Guilford. The plaintiff claimed through S. T. Carrow, to whom the Sheriff of Beaufort County conveyed, by virtue of a sale under execution of the lands of Noah W. Guilford, on 6 January, 1872. Plaintiff exhibited mesne conveyances, including deed of trust from Carrow to John C. Blake, deed from Blake, trustee, to the First National Bank of Raleigh, and from the bank to the plaintiff, dated 31 October, 1883.
The defendant claimed under a deed from N.W. Guilford to George W. Guilford, trustee for Graham A. Guilford, dated 23 May, 1872. It was in evidence that this survey was made between the date of the deed of Satchwell, Sheriff, to Carrow and that of Noah W. Guilford to George Guilford, trustee, and at some time in the spring of 1872. S. T. Carrow was at the time of the survey in possession under the Sheriff's deed.
A deed conveying land is a species of contract, in the enforcement of which the leading purpose of the courts, where the controversy involves a question of boundary, is to ascertain the precise lines and (23) corners as to which the minds of grantor and grantee occurred. Parol proof, of course, is not as a general rule admissible to vary or contradict a plain written description, but it is always competent to show where the parties located the lines and corners by a contemporaneous survey, in order to define more exactly what was intended to pass. Cherry v. Slade, 7 N.C. 82. The survey made under such circumstances is intended, in contemplation of law, to reduce to a certainty what the courts would have held sufficiently definite for enforcement as a contract without a survey only when it appeared that by running from an established point called for according to the description contained in the deed a definite boundary would be embraced within the lines. Hence it is held competent to prove that a contemporaneous, but not a subsequent, survey located a corner at a place different from that ascertained by following course and distance. The corner was located by means of the gum pointer *Page 17 
and the line was marked by Carrow, not contemporaneously or with a view to the subsequent execution of the conveyance by Noah W. Guilford to George Guilford, trustee, and the law does not therefore impute to the parties the intent to contract with reference to the survey merely because it had been made before the date of the deed. Admissions made in the progress of a survey subsequent to the date of the deed executed to George Guilford, or even a parol agreement to mark the lines and corners in a certain way, would not have been competent to show that a line or corner was located otherwise than where a definite description contained in the deed would locate it, because the effect would be to contradict or vary a written contract, upon its face free from ambiguity, by a subsequent verbal agreement entered into without consideration. Caraway v. Chancey, 51 N.C. 361;Buckner v. Anderson, 111 N.C. 572; Shaffer v. Hahn,111 N.C. 1. It is equally clear that the testimony is not (24) competent as proof of an act accompanying the delivery of a deed and constituting a part of the res gestae, so as to bring the case (in accordance with the contention of counsel) within the reason of the ruling in Roberts v. Preston, 100 N.C. 243.
Though Carrow is dead, his declarations made in his own interest would be no more competent when they relate to the boundaries of land than when made in reference to other subjects. Heddrick v. Gobble, 63 N.C. 48; Rayv. Pearce, 84 N.C. 485; Roberts v. Roberts, 82 N.C. 29. But the declarations of parties to suits are always admissible evidence against, though not for, them. McRainey v. Clark, 4 N.C. 698; McDonald v. Carson,95 N.C. 377; Gidney v. Moore, 86 N.C. 484; Avent v. Arrington, 105 N.C. 377.
If the declaration of Carrow would have been competent against him as plaintiff in this action, it would be competent under the general rule applicable to all classes of cases against the plaintiff, who claims through him. May v. Gentry, 20 N.C. 117; Woodley v. Hassell, 94 N.C. 157;Braswell v. Gay, 75 N.C. 515. It has been frequently held, too, that where declarations are made by one in possession of land, characterizing or explaining his claim of ownership or in disparagement of his own title, they are competent as evidence not only against the declarant, but against all claiming under him. Guy v. Hall, 7 N.C. 150; Kirby v. Maston,70 N.C. 540; Marsh v. Hampton, 50 N.C. 382; Mebane v. Bullard,82 N.C. 23; Nelson v. Whitfield, 82 N.C. 46; Pearce v. Jenkins,32 N.C. 355; Peck v. Gilmer, 20 N.C. 391; Cansler v. Fite,50 N.C. 424. If, however, the declaration of Carrow, made even against his own interest, was offered to contradict a plain, unambiguous description, it was clearly incompetent *Page 18 
(25) under the principle laid down in Schaffer v. Hahn and Buckner v. Anderson, supra. It appears that while there is no description of the disputed line given in the deed from N.W. Guilford to George Guilford, trustee, except by reference to Carrow's line and the lines of other adjacent tracts, it purporting to cover the land bounded by the lines of Carrow and others, the surveyor ran the several calls of Carrow's deed, or the deed to which it refers for description, either by course and distance or to established corners, from the beginning to a pine, at fig. 7, known as the "proved pine," and thence, according to the course and distance of the deed, south 46 west 313 poles along an old marked line, the distance giving out at 8, though no gum was there found. The other calls were also run by course and distance, or to known corners at stations 9, 10, 11, and back to the beginning at fig. 1. Is Carrow's declaration admissible to control a well-defined description and an undisputed survey by course and distance? The general proposition that the declarations of one in possession in disparagement of his own right are admissible as against all who claim through or under him is of necessity subordinate to the more important rule that an unambiguous, written description, which is the best evidence of the nature of the contract between the parties, and an undisputed location by a survey in accordance with the running from known corners by course and distance cannot be contradicted by more uncertain proof of declarations by a former owner while in possession, which, if acted on, would require an utter disregard of course and distance. If, as the surveyor testifies, by running from a known corner at the beginning either to established corners or by course and distance, according to the calls of the deed, to an admitted corner at 7, and thence by course and distance, he located the plaintiff's gum corner at 8, it is not competent to contradict that description, which from known or admitted (26) data fixes the corner with mathematical certainty by the survey there, by a declaration made by the grantee under a mesne conveyance, while in possession. The beginning corner was not disputed, and courses and distances from it inevitably carried the surveyor to 7, which the defendant admitted was a corner which he made the point of departure in the controversy about the next line. The calls, following chain and compass, as was not disputed, would run from 7 to 8, 9, 10, 11 and 1, so as to include the land trespassed upon and the whole boundary claimed by the defendant, except the triangle 8, 9, F. It is plain, then, that to give to the proof of Carrow's declaration the effect of cutting off 300 acres by running from 7 to E would be to contradict by hearsay evidence the description, which from admitted data and by survey, the correctness of which was not questioned, appears *Page 19 
to cover the locus in quo and fix the plaintiff's boundary as claimed by him. The case was somewhat confused in the argument by leaving the impression that there was doubt about the location of plaintiff's calls, whereas it was the description of the defendant's title, which called for plaintiff's line and the line of others, so as to include what was not embraced by the deeds of either of them. We think, therefore, that there was no error in excluding the testimony as to Carrow's declaration. The verbal agreement of Carrow to join N.W. Guilford in the conveyance to George, which was not carried out because of Carrow's embarrassment, in part by the mortgage through which plaintiff claims, was utterly void in any aspect. There is as little force in the exception to the refusal of the Judge to admit the testimony that Paul Lincke, plaintiff's agent, prevented the sale of a raft.
The recitals in the deed from the trustee to the bank are deemed prima facie correct in so far as they show that the sale was made by the trustee in pursuance of the power contained in (27) the deed of trust. Shaffer v. Hahn, supra. The executions under which the land was sold as the property of N.W. Guilford and bought by Carrow issued upon debts created before the year 1868. The title passed to the purchaser, therefore, discharged of all liability to allotment as a homestead. Long v. Walker, 105 N.C. 90.
Upon a careful review of all the exceptions we conclude that the judgment must be
Affirmed.
Cited: Hamilton v. Icard, post, 478; Deaver v. Jones, 119 N.C. 599;Higdon v. Rice, ib., 625, 626, 627, 629; Westfelt v. Adams, 131 N.C. 383;Ratliff v. Ratliff, ib., 428, 431; Prevatt v. Harrelson, 132 N.C. 252;Cowles v. Lovin, 135 N.C. 491; Yow v. Hamilton, 136 N.C. 359; Hemphillv. Hemphill, 138 N.C. 506; Norcum v. Savage, 140 N.C. 473; Bland v.Beasley, ib., 631; Bivings v. Gosnell, 141 N.C. 343; Vanderbilt v.Johnson, ib., 373; Haddock v. Leary, 148 N.C. 380; Hill v. Bean,150 N.C. 437; Lumber Co., v. Triplett, 151 N.C. 411; Lamb v. Copeland,158 N.C. 138; Bank v. Whilden, 159 N.C. 281; Ricks v. Woodward, ib., 649; Corey v. Fowle, 161 N.C. 189; Kirkpatrick v. McCracken, ib., 200;Clarke v. Aldridge, 162 N.C. 331; Allison v. Kenion,163 N.C. 585; Lumber Co. v. Lumber Co., 169 N.C. 89, 96;McKimmon v. Caulk, 170 N.C. 57; Byrd v. Spruce Co., ib., 434;Lumber Co., v. Hinton, 171 N.C. 30; Improvement Co.v. Andrews, 176 N.C. 282; Singleton v. Roebuck, 178 N.C. 203;Timber Co., v. Yarbrough, 179 N.C. 339. *Page 20