E. BLACK v. BENJAMIN JUSTICE and wife.

*Deed, registration of—Married Women—Execution Sale—Eject-ment—Purchaser of Equity of Redemption.*

1. A deed having no subscribing witness, may be admitted to probate and registration upon proof of the hand-writing of the maker; or, if the subscribing witness be dead, upon proof of his hand-writing. *Rollins* v. *Henry*, 78 N. C., 342, overruled upon this point. (Review of acts of assembly as to the registration of deeds, by ASHE, J.)

2. Money arising from the sale of the wife's land by husband and wife in 1851, becomes the property of the husband by virtue of his marital rights. And the rule is not affected by the fact that the feme covert in this case was an infant at the time of making the executory con-contract, for there was no *conversion* until the contract was consummated, which was after she attained her majority.

3. Where an execution defendant with a fraudulent intent places money in the hands of another to buy his own property, the sale by the sheriff is a nullity, and the property still subject to the satisfaction of judgment creditors.

4. A purchaser of an equity of redemption has a sufficient legal interest in the land to enable him to recover possession thereof from the mortgagor.

(*Rollins* v. *Henry*, 78 N. C., 342, overruled; *Temple* v. *Williams*, 4 Ired. Eq., 39; *Rouse* v. *Lee*, 6 Jones Eq., 352; *Scull* v. *Jernigan*, 2 Dev. & Bat. Eq., 144; *Bateman* v. *Latham*, 3 Jones Eq., 35; *March* v. *Berrier*, 6 Ired. Eq., 524; *Dobson* v. *Erwin*, 1 Dev. & Bat., 569; *Tally* v. *Reed*, 74 N. C., 463; *Davis* v. *Evans*, 5 Ired., 525; *Hill* v. *Whitfield*, 3 Jones, 120; *Crews* v. *Bank*, 77 N. C., 110; *Norwood* v. *Morrow*, 4 Dev. & Bat. 442, cited, distinguished and approved.)

CIVIL ACTION to recover land tried at Fall Term, 1881, of CLEAVELAND Superior Court, before *Avery, J.*

The following issues were submitted to the jury:

1. Was the purchase money paid as the consideration for the deed executed by sheriff Logan to the feme defendant Mahala J. Justice, the money of the defendant Benjamin Justice?

2. Did Benjamin Justice cause said deed to be executed to the defendant M. J. Justice with intent to defraud his creditors?

3. Did the said M. J. Justice by false and fraudulent representation made by her agent prevent a fair competition of bidders, and thereby cause the land to sell for less than its value?

The plaintiff offered in evidence the transcript of a judgment from the judgment docket of the superior court of Gaston county, rendered in favor of the plaintiff against the defendant Benjamin Justice for the sum of $682.08, with interest on $671 from the 13th day of November, 1876, the date of the rendition of the judgment.

He offered a deed from the sheriff of Cleaveland county covering the land in dispute, dated the 3rd of February, 1879, which recited the execution upon the aforesaid judgment, the sale thereunder on the 3rd of February, 1879, and that E. Black was the highest bidder.

The admission of this deed in evidence was objected to by the defendant because it had not been properly admitted to probate. The deed had no subscribing witness, and its execution was proved before the probate judge of the county of Cleaveland by the oath of J. W. Gidney, who swore that he was well acquainted with the hand-writing of B. F. Logan (the sheriff), having often seen him write, and that his signature to the deed was in his own proper hand-writing. The objection was overruled and the defendant excepted.

The plaintiff then offered in evidence a deed conveying the same land from the sheriff to the feme defendant, dated February 9th, 1878, to show that both parties claimed from the same source.

The plaintiff also introduced John Falls, who testified that on the 6th of February, 1878, (the sale under which the defendant claimed,) he bid off the land at sheriff's sale; that Benjamin Justice, the defendant, came to him and

told him that the land was about to be sold, and asked the witness if he would bid it off for his wife and let her have it; and that if the witness would bid off the land, pay for it, and convey it to his wife, he would give him $200. The land was sold and he bid it off, and during the same week, being court week, the defendant came to him and said he had money from his wife and wanted to pay for the land; that the witness paid the money handed to him by the defendant, who said it was his wife's money, and he transferred his bid to the wife and the sheriff made the deed to her. Benjamin Justice told witness that this money came from the proceeds of a tract of land that witness bought from his wife. Witness also testified that he bought the wife's interest in her mother's land before the wife was of age, or married, and the deed was executed to him by Benjamin Justice and his wife after her marriage and full age; that he paid her $47.50 for the land about February, 1851; the land bid off at sheriff's sale brought $26.00; and that Benjamin Justice was then in critical or failing circumstances and embarrassed with debt. He further testified that there was a large crowd of people present at the sale, and that the land is now worth $6.00 or $7.00 per acre, and at the sale was worth $5.00 per acre unencumbered.

A. R. Homesly, a witness offered by the plaintiff, testified that the sale did not come off Monday or Tuesday; that he was there as agent of the plaintiff to buy for him; that on Tuesday the defendant, Benjamin, told him that the land would not be sold; that he had it all arranged. The land is worth $10.00 per acre, and would have brought at a fair sheriff's sale $5 00 per acre.

Logan, the sheriff of the county, was then introduced by the plaintiff and testified, that the sale was for some cause postponed until Wednesday, and the land sold on that day; that sales are frequently postponed from day to day; that J. W. Gidney announced at the sale that there was a mort-

gage on the land, and thinks that Gidney was counsel for Justice, and that it was "greenback" money that Falls paid him for the land.

The defendant, Mrs. Justice, introduced two judgments—one in favor of A. Williams, docketed April 6th, 1876, and the other in favor of G. M. Green, administrator, docketed December 2nd, 1869, both against Benjamin Justice.

The defendant proposed to offer in evidence a mortgage deed upon the land, of prior lien to plaintiff's and defendant's judgments, to show that the land was encumbered; and in answer to the testimony of the plaintiff that the land brought less than its value when Mrs. Justice bought, and also to show that plaintiff bought nothing at sheriff's sale. The deed was admitted for the first purpose, but rejected for the second purpose.

The mortgage was then introduced for the first purpose, and was a deed from B. Justice and wife to J. Jenkins and H. D. Lee, dated 12th January, 1875, and registered 10th February, 1878.

H. D. Lee, witness for defendant, swore that the note secured by the mortgage was given January 12th, 1878, and that divers payments had been made thereon, from October, 1875, to 22d February, 1877, and that there is still due on it about $450.00

Mahala J. Justice, the feme defendant, was then ·introduced on her own behalf and testified that having understood that the land had been advertised for sale, she requested her husband to ask Mr. Falls to bid it off, if she had money enough to pay for it. He told her afterwards what it came to, and she gave him $26.50 to pay Mr. Falls; that she got the money (silver) from Mr. Falls for her land soon after she married; that he paid her near fifty dollars and she kept that money from that time; and that she was married in 1850, and now lives on the homestead adjoining that place.

At the request of the plaintiff the court gave the following instructions to the jury:

1. That if it is conceded, or the jury find, that the purchase was made when the husband was embarrassed with debt, when it is admitted that the purchase was made during coverture, the burden is upon her to prove distinctly that she paid for the land purchased with funds that were not furnished by the husband.

2. That if Benjamin Justice and M. J. Justice sold her land in 1851 (being then married) and received the money, that the money vested in the husband as his property.

3. If the money paid as a consideration for the deed to M. J. Justice was Benjamin Justice's money, then the sale would be fraudulent as to creditors.

4. That if Benjamin Justice, as his wife's agent, represented to A. R. Homesly, the agent of Black, that the debt was arranged and that there would be no sale, when such was not the fact, with the intent to get rid of Homesly as a competing bidder, and Homesly was misled by this false representation, and prevented from attending the sale, and did not attend the sale, then this sale is void as to creditors.

5. That even if Mrs. Justice paid her money for the land, yet if there was a fraudulent combination between her and her husband, he being embarrassed, to have the land sold for less than its value, in order that he might derive advantage therefrom, and they did procure it to be sold, it is void as to creditors.

6. That if the jury believe the testimony of Mrs. Justice, the money given to her husband to buy this land was the money and property of Benjamin Justice.

7. That it was incumbent on defendants to prove that the mortgage to Lee covered this land, and it was their duty to satisfy them of this fact.

The defendant asked for the following instructions:

1. If the money was derived from the wife's real estate

and was kept by her separate and apart from the husband, and was used by him with her assent in the purchase of this land at execution sale, the money then became impressed with the character and properties of land and her title is good.

2. Upon the pleadings and evidence in the case the plaintiff cannot recover judgment for the land.

3. No fraud or combination on the part of the husband to suppress bidding, not participated in by the wife, makes the deed of the sheriff void as to her.

4. Benjamin Justice was the agent of the wife only to bring the money to Falls.

The court refused the first and second instructions as requested, but gave the third; and the record does not show what disposition was made of the fourth.

The jury responded in the affirmative to each of the issues submitted, and there was judgment thereon for the plaintiff, from which defendant M. J. Justice alone appealed.

*Messrs. W. A. Hoke, D. Schenck,* and *Battle & Mordecai,* for plaintiff.

*Messrs Bynum & Grier,* for defendants.

Ashe, J., after stating the case. The exception taken by the defendant to the admission of the sheriff's deed offered by the plaintiff on account of alleged defect in the probate, would have given us no difficulty except for the opinion expressed by Rodman, J., in the case of *Rollins* v. *Henry,* 78 N. C., 342, in which the learned judge says : "We are of opinion that this deed was improperly admitted. It does not come within any of the cases provided for by the statute;" (Bat. Rev., ch. 35., § 2, sub. div. 3 and 4) and held, that although a deed may be admitted to registration, by proof at common law, to make it evidence its execution must be proved on the trial, and for the position cited the case of

*Carrier* v. *Hampton*, 11 Ired., 307. We cannot give our as-assent to such a construction of those sections of the Revisal.

It will be noted that the decision in the case of *Carrier* v. *Hampton*, was made in 1850, at a time when the only statute law for the probate of deeds for registration was contained in the Revised Statutes, in which there was no provision for the probate of a deed having no subscribing witness. This omission was afterwards supplied by section 15 of chapter 37 of the Revised Code, which declared that " in all cases of the probate of any deed or other instrument required or allowed to be registered, having a subscribing witness who may be dead, satisfactory proof of his hand-writing or of the hand-writing of the grantor or maker, when there is no subscribing witness, shall be deemed sufficient proof for the purpose of allowing the registration thereof." It will be noticed that the act makes no reference to the death of the grantor but only to that of the subscribing witness.

By implication so much of this 15th section of chapter 37 of the Revised Code, as provided for the proof of the hand-writing of the grantor, when there was no subscribing witness, was repealed by the 2nd section of the act of 1871, ch. 271, which provided that, " whenever any such instrument (such as is required or allowed to be registered) shall not have a subscribing witness, and the maker thereof shall be a non-resident or *dead,* proof of his hand-writing shall be sufficient to admit the same to registration."

But in the next year after the passage of this act the 15th section of chapter 37, Revised Code, was re enacted by the act of 1872, ch. 28 ; and the same act declares that all laws and clauses of laws in conflict with its provisions are repealed. The effect of which was to repeal the 2nd section of the act of 1871, ch. 271.

, And sub-division 3 of Bat. Rev., ch. 35, § 2, is the act of 1871, and sub-division 4 is the act of 1872 ; the latter there-fore repeals so much of the former as is in conflict with it

and our opinion is that the deed was properly admitted in evidence.

In considering the case upon the exceptions, we think its determination depends mainly upon the correctness of the ruling of His Honor upon the first and second exceptions of the defendants, and they present the questions—first, was the land in dispute bought with the money of the defendant M. J. Justice? and secondly, has the plaintiff the right to recover the possession of the land under the pleadings and evidence in the action?

Assuming the testimony of Mrs. Justice to be true, and conceding that the land was bought with the money which was the proceeds of the sale of her land, just so soon as the land was converted into money it was personal property and vested in her husband by virtue of his marital rights. *Temple* v. *Williams,* 4 Ired. Eq., 39; *Rouse* v. *Lee,* 6 Jones Eq. 352; *Ramsdale* v. *Craighill,* 9 Ohio, 198; *Sabel* v. *Slingluff,* 62 Maryland 13, and *Hackett* v. *Shuford,* at this term, *ante,* 144, and cases there cited.

Nor is this principle changed or affected by the fact that the defendant M. J. Justice was an infant at the time of making the executory contract for the sale of her land, for the *conversion* was not made until the contract was consummated by the receipt of the purchase money and the execution of the deed by herself and her husband, which was after she attained her majority. The doctrine, as to money converted into land or land into money, applies to cases where the conversion is directed in wills or made by sales authorized by the courts of equity. In this state it is held that the proceeds of real estate sold under a decree of court and belonging to infants and femes covert remain real estate, until the infant arrives at age and elects to hold the same as personalty, or the feme becomes discovert, or, by some valid act under the law while covert, makes her election or disposes of the fund; and while this was the rule

without any staiutory provision, it is distinctly declared in the statute to be applicable to cases where such sales are authorized by decrees of court. *Bateman* v. *Latham,* 3 Jones Eq., 85; *March* v. *Berrier,* 6 Ired. Eq., 524; *Scull v. Jernigan,* 2 Dev. & Bat. Eq., 144.

But aside from the legal view of the question, upon the testimony of Mrs. Justice alone, the evidence offered in regard to the payment of the money was such as to warrant the jury in coming to the conclusion, as a matter of fact, that it was the money of Benjamin Justice, and there was no error in the refusal of His Honor to give the instructions asked by the defendant upon this point.

The fact then having been found by the jury that the consideration of the deed made by the sheriff to M. J. Justice was money which was the property of Benjamin Justice, the sale made by the sheriff was a nullity. For if a defendant in an execution places money in the hands of another for the purpose of purchasing his own property at a sale under execution, with intent to defraud his creditors, and that person buys it and takes a deed for it, he is still the owner of it, and it may be sold to satisfy the judgment of another creditor. *Dobson* v. *Erwin* 1 Dev. & Bat., 569.

Upon this ground alone the plaintiff would have the right to recover, provided the land was subject to execution sale, and the action to secure possession can be maintained. And about that there can be no doubt. The defendants' counsel in their brief filed in the cause, rely upon the authority of the case of *Tally* v. *Reed,* 74 N. C., 463, but that case has no application. The question there was, whether, when a vendor of land retains the title to secure the payment of the purchase money, a sale of the land under a *fi. fa.* against the vendor passes to the purchaser at sheriff's sale only the naked legal title, and vests in him the right to the purchase money. But the case of *Davis* v. *Evans,* 5 Ired., 525, does apply, and is decisive of the question. Chief Jus-

tice RUFFIN, speaking for the court in that case, says: "We consider that the act of 1812 makes the equity of redemption, when sold under execution, a legal interest to the extent, at least, of enforcing it by the recovery of possession from the mortgagor himself."

There is no error in the instructions of the plaintiff given by His Honor, except the fourth and fifth.

There is no proof that the sheriff participated in the alleged fraud and combination to prevent a competition at the sale, and unless he did so, the sale is not void. *Hill* v. *Whitfield*, 3 Jones, 120; *Crews* v. *First National Bank*, 77 N. C., 110.

But the error is immaterial and cannot affect the result for the verdict and judgment upon a view of the whole case appears to be right, and when that is the case, an error which has become immaterial will not be noticed. *Norwood* v. *Morrow*, 4 Dev. & Bat., 442.

We are of the opinion there was no error, and the judgment of the superior court is therefore affirmed.

No error.                                      Affirmed.