A. W. SHAFFER v. A. & M. HAHN.

*Boundary—Corporation—Deed, Execution and Probate of—Evidence—Banks, National.*

1. A copy, duly certified, of the organization of a National banking association, under §§ 5133, 5134, Rev. Stat. U. S., is sufficient evidence of the corporate existence of such organization.

2. A deed from a corporation, properly executed and containing in its body the true name of such corporation, is not rendered invalid by the recital therein that it is made by "the President and Directors" of the corporation, as these words may be rejected as surplusage.

3. Where a deed was signed by one representing himself to be the President of a corporation, and the probate thereof recited the fact that the proofs showed such person was, in fact, such officer: *Held*, that it was not necessary, upon a trial involving title under the deed, to offer further evidence of the official character of the person signing the deed.

4. Where there is a subscribing witness to a deed, its execution may be proved by such witness without the acknowledgment of such maker.

111—1

5. If the calls of a deed are sufficiently definite to be located by extrinsic evidence, that location cannot be changed by parol agreement, unless it was contemporaneous with the making of the deed.

6. Where a deed contains conflicting, or even irreconcilable descriptions, that interpretation will be given it which will support it if possible, and that description will be adopted which will carry out the certain intent of the maker.

This was a CIVIL ACTION, brought to recover land, tried at Fall Term, 1890, of the Superior Court of BEAUFORT County, *Connor, J.,* presiding.

Both parties claimed title through Noah W. Guilford, who was admitted to have been the owner of the land in controversy prior to September 1st, 1871, when he executed a deed to his son Charles F. Guilford, who, in turn, conveyed to the defendants by deed, dated December 22d, 1879, referring to the deed executed by Noah W. Guilford to himself for description.

The plaintiff, to show title in himself, offered—

1. A Sheriff's deed, dated January 6th, 1872, to Samuel T. Carrow, reciting a levy and sale by sundry executions

2. A deed of trust from S. T. Carrow and wife to John C. Blake, dated December 24th, 1873, conveying the land in controversy.

3. A deed of trust from J. C. Blake, trustee, to the Raleigh National Bank of North Carolina, dated January 31st, 1876.

4. A certified copy of an organization certificate of the Raleigh National Bank of North Carolina, dated October 22d, 1872.

5 A deed from said bank to the plaintiff A. W. Shaffer, dated October 31st, 1883.

The boundary D U O P Q B C, indicated by dotted lines on the plot, shows the possession of the defendants, covering two hundred acres. The plaintiff Shaffer contends that defendants' boundaries include only 38.2 acres, beginning at

D on plot and running thence to U; thence, with Gainor's line 100 poles to Fig. 1; then south 160 poles to Bridgeman's line (but the line run south actually reached Bridgeman's line at a distance of 130.5 poles at Fig. 2); thence to the beginning. The plot of the surveyor is made a part of the statement.

The deed, purporting to be a conveyance from the Raleigh National Bank, was signed by E. G. Reade, President; Charles H. Belvin, Director, and W. G. Upchurch, Director. The probate of said deed was as follows:

"NORTH CAROLINA—WAKE COUNTY:

On this, the 1st day of November, A. D. 1883, personally came before me, D. Reid Upchurch, an acting Justice of the Peace of said county, Fabius H. Briggs, who, being duly sworn, sayeth that he knows the common seal of the Raleigh National Bank, of Raleigh, North Carolina, and is also acquainted with E. G. Reade, President of said bank, and also with Charles H. Belvin and W. G. Upchurch, two of the

Directors of said bank, and that he, the said Fabius H. Briggs, saw the said E. G. Reade, President as aforesaid, affix said seal to the annexed deed, and also saw him and the said Charles H. Belvin and W. G. Upchurch sign the deed, and that he, the said Fabius H. Briggs, became a subscribing · witness to the said deed in their presence.

Witness my hand and private seal, the day and year first above written.

(Signed)  ·  D. REID UPCHURCH, J. P.  [Seal.]"

" The foregoing certificate of D. Reid Upchurch, a Justice of the Peace of Wake County, is adjudged to be correct, and I certify that D. Reid Upchurch is an acting Justice of the Peace of said county, and that his signature thereto is in his own handwriting.

Witness my hand and official seal, this 1st day of November, 1883.               CHAS. D. UPCHURCH,
                                     *Clerk Superior Court.*"

"BEAUFORT COUNTY, N. C. :

It appearing to my satisfaction, from the foregoing certificate of D. Reid Upchurch, a Justice of the Peace for Wake County, and from the certificate and official seal of Chas. D. Upchurch, Clerk of the Superior Court of said county of Wake, that the foregoing deed of conveyance has been duly executed.   It is adjudged that the same, with the certificates, be registered.   This 22d day of September, 1885.

                                     C. WILKENS,
                                     *Clerk Superior Court.*"

"Received in office at 11 A. M., September 22d, 1885, and registered September 24th, 1885.               B. STILLEY,
                                     *Register.*"

6.   The defendants then showed by the testimony of several witnesses, that in 1872, the said S. T. Carrow then own-

SHAFFER *v.* HAHN.

ing and being in possession of the lands claimed by the plaintiff, including the Whitford Tract, together with the said Charles F. Guilford, had the land claimed by the latter surveyed; that the said Carrow went with the surveyor around the lines claimed by the defendant, the dotted lines upon the map; that these lines were then distinctly marked by the said Carrow, or by persons under his direction, as the lines of the C. F. Guilford land; that C. F. Guilford was present upon the said survey, and the lines so run and marked were agreed upon between them as the lines of the C. F. Guilford land; that the line from P to Q upon the map is a ditch, and from Q to B is an avenue, and these lines were then agreed upon between said Carrow and Guilford, instead of extending the line O P so far that a line east from said extended line would strike Bridgeman's line, and a north course with Bridgeman's line would run to B.

This agreement was in parol.

The defendants asked the Court to charge the jury:

1. That if the lines S O and P O, and the lines P Q and Q B were marked by S. T. Carrow and Charles F. Guilford, or by anyone under their authority and direction, about the years 1873 or 1874, and were agreed upon or recognized by them as the lines which separated their lands, then it is evidence of the true location of such lines.

2. That if the defendants, and those under whom they claim, have been in the possession up to such lines for more than seven years prior to the institution of this suit, then the plaintiff cannot recover.

3. That the deed from N. W. Guilford to Charles F. Guilford conveys the land marked upon the map D U O P Q B C D, if the jury should believe that the lines S O and O P, and the lines P Q and Q B, were marked and defined by S. T. Carrow and Charles F. Guilford, as stated in the first prayer for instructions.

The Court declined to give these instructions, and the defendants excepted.

The Court was of the opinion that, by a proper construction of the descriptive clause in the deed from N. W. Guilford to Charles F. Guilford, the said deed conveyed the land comprised within the following lines, as shown on the map: Beginning at D and running thence to the pine at Gainor's corner, U; running thence with said Gainor's line N. 45° W. 273.2 poles to the letter "S," that being fixed by the surveyor as the point from which a line south to O B, Bridgeman's line "T," thence to C, thence to D, the beginning, would make 150 acres, and that no parol agreement between S. T. Carrow and Charles F. Guilford could extend or change the said boundary, so instructed the jury—whereupon the issues were answered as appears in the record.

The defendants moved for a new trial upon the grounds that the Court erred: (1) In admiting the deed from Bryan Whitford and wife to Noah W. Guilford; (2) the deed from F. J. Satchwell to S. T. Carrow; (3) the deed from John C. Blake to the Raleigh National Bank of North Carolina; (4) the deed to A. W. Shaffer, and in holding that the latter deed was the deed of the Raleigh National Bank of North Carolina and conveyed the land of the said bank; (5) in refusing to admit the conveyance of the *locus in quo* by N. W. Guilford to Felix Guilford, unless defendants could connect themselves with said conveyance; (6) the refusal of the Court to charge as requested ; (7) that portion of the charge as to what was conveyed by the C. F. Guilford deed, and the marking of the lines by C. F. Guilford and S. T. Carrow.

Motion for a new trial refused.

*Messrs. J. H. Small* and *W. B. Rodman* (by brief), for plaintiff.

*Mr. C. F. Warren,* for defendant.

AVERY, J.—after stating the case: The burden being upon the plaintiff to offer *prima facie* testimony tending to connect himself with N. W. Guilford, the common source of title, it is proper first to consider and pass upon exceptions to the refusal to exclude *mesne* conveyances, constituting an essential part of such connecting line, for want of proper probate, or upon exceptions impeaching such deeds for inherent defects or raising the question whether the evidence, if undisputed, was sufficient to fit the description to the land. Objection was made to the probate of the deed executed by John C. Blake to the Bank in the year 1876, because the certificate set forth that the deed was acknowledged by the grantor when the name of W. H. Battle appeared upon its face as a subscribing witness. The statute then in force [ch. 35, § 2 (1), Bat. Rev.] provided that the proof of the execution by a grantor residing in the State might be made either by his acknowledgment or on the oath of the subscribing witness. Construing the subsection mentioned, in connection with the first section of the same chapter, it seems too plain to admit of serious argument that the probate is sufficient. *Black* v. *Justice*, 86 N. C., 504.

It is now conceded, or not disputed, that the copy of the organization certificate was properly certified, and that the original certificate was drawn, acknowledged and deposited in accordance with §§ 5133 and 5134, Rev. Stat. U. S., and such being the fact, it would follow that the copy offered was an exemplification of the original, upon the filing of which the statute made the persons composing the association, formed for the purpose of entering into banking business, a body politic with all the powers of a National bank. Rev. Stat. U. S., § 5136.

The objection that the name of the corporation does not appear as grantor in the body of the deed to Blake, is untenable. An inspection of the instrument shows that the full corporate name is set forth in its proper place. The words,

" The President, Directors, &c., of," prefixed before the words
" The Raleigh National Bank, a corporation organized and
transacting business under the laws of the United States, at
Raleigh, N. C.," may be treated as surplusage, leaving the full
and proper corporate name as the description of the person.
Where the name of a corporation is signed to the deed as
grantor, if it is to be found also in the premises, the fact that
it is preceded by the words quoted, which merely indicate
that the corporation is acting through the officers empowered
by law to convey land for it, does not destroy its efficacy as a
conveyance of the interest of the corporation.  *Bason* v. *Mining Co.*, 90 N. C., 417.  We see no reason why, in furtherance of the purpose to carry out the intent of the parties, the
Court should not disregard immaterial words or punctuation,
or resort to transposition, in order to find in the body of a
deed the proper designation of the grantor who has signed
it, adopting, with that end in view, the rule of construction
applicable where the question is whether a deed, executed
before the passage of the Act of 1879, contains words of
inheritance and passes the fee-simple interest.  *Anderson* v.
*Logan*, 105 N. C., 266.  This case is clearly distinguishable
from that where the name of the wife is signed with that of
the husband to a deed, while it does not appear in the body
of the deed in any connection, and the question involved
does not depend for its solution upon the well-recognized
rule that a corporation must sue and be sued by its proper
corporate name, and not in the name of its officers.  The
question here, is whether the manifest purpose and effort of
a corporation, through the officers appointed by law to act
for it, to alien land (conveyed to it to secure a debt, and to
which it was not empowered to hold title longer than five
years), shall be defeated by the act of the draughtsman in
unnecessarily prefixing the words mentioned.  It is equally
clear that the doctrine of latent ambiguity has no bearing
upon the point involved in this controversy, since, by disre-

garding surplus words, we have left the proper corporate name of the bank, not another name or designation by which it was popularly known, as in *President, &c.,* v. *Norwood,* Busbee's Equity, 65. There was no necessity for the introduction of testimony to show the existence of a corporation in Raleigh, known by a particular designation, since the certificate of organization was proof of the existence of the very corporation named as a party in the premises, and purporting to execute the deed through its proper officers. We think the objection to the deed from the Bank, on the ground that there was no evidence that E. G. Reade was its President, is equally untenable. If the inference would not have arisen, from the mere certificate of proof by the witness, that the deed was executed by the person named as grantor, it is unquestionably competent to embody in the certificate the explicit statement of the witness, that the party signing held the office which he purported to fill, and thus identify him. The object of the probate is to establish the facts; not simply that the deed was signed by one purporting to be, but by one known by the witness to be the person described in the deed, and on this principle the actual signing by a grantor and a subscribing witness (both dead), in the presence of a person whose name was not signed as a witness, was allowed to be shown by such person, who, it was declared, was a competent witness to prove the execution for registration. *Miller* v. *Hahn,* 84 N. C., 226.

The deed from N W. Guilford to C. F. Guilford, being of older date than the deed of the Sheriff to Carrow, the defendants would hold as against the plaintiff all the land included within the boundaries of his deed, while it is conceded that the Sheriff's deed passed all of the adjacent land of N. W. Guilford to Carrow, and through the *mesne* conveyance, if admitted in evidence, to the plaintiff. If the boundaries of the defendants can be so located as to cover the territory on which the trespass is alleged to have been committed, and

which was, when the action was brought, in the possession of the defendants, then the plaintiff's *prima facie* case would be rebutted, and he would not be entitled to recover. The descriptive clause of the deed to C. F. Guilford is as follows: " Beginning at the mouth of Josephus Moore's branch on Jack's creek and runs up the branch to the main road; then with the road, Bryant Gainor's line, and with his line one hundred poles; then south one hundred and sixty poles, or far enough on the northwest or south lines to make one hundred and fifty acres; then east to Bridgeman's line.; then with his line north to his corner; then east with Bridgeman's line to Jack's creek; then with the run of said creek to the beginning." The beginning corner, ·marked " D " on the plot, is a known point, at the mouth of Moore's branch on Jack's creek, and the three succeeding calls it is admitted run with the natural boundaries, the branch, the main road, the Gainor's line by U to figure 1. It is also conceded that the last call in the description runs from the intersection of Bridgeman's line with Jack's creek down that stream in a southeasterly direction to the beginning at D. If after running the three first lines to figure 1, the next call, " 160 poles south," should follow the course, it would intersect with Jack's creek at a distance of $130\frac{1}{2}$ poles, and northwest of the beginning, and would intersect there also with Bridgeman's line where said creek is his boundary. If the course is to be blindly followed, without regard to any limitation implied from the context, for the full distance, 160 poles, it would run entirely across Bridgeman's land and beyond any of Bridgeman's lines. But the descriptive words " then south 160 poles " are followed by an alternative description which is inconsistent with a purpose on the part of the grantor to locate the next course south from figure 1. It is manifest that the intent was to run northwest along the line between N. W. Guilford and Gainor so far as it extended, to the point where, by running south to Bridgeman's line, and with it

east to Jack's creek, and down Jack's creek to the beginning, there should be included in the whole boundary 150 acres. In *Proctor* v. *Pool*, 4 Dev., 370, Chief Justice RUFFIN delivering the opinion of the Court, said: "It is also a general rule that the deed shall be supported, if possible; and if by any *means* different descriptions can be reconciled, they shall be, or if they be irreconcilable, yet if one of them sufficiently point out the thing so as to render it certain that it was the one intended, a false or mistaken reference to another particular shall not overrule that which is already rendered certain." If instead of running northwest along Gainor's line, we interpret the description as a call for running first north, then west, and then south to Bridgeman's line, the 150 acres might be measured off in many ways by prolonging the north line and diminishing the length of the west line; but a description that may be met by running in many ways and including different areas, is void for uncertainty. Where a description is substituted, as controlling course and distance, as we propose to do in this case, it must be sufficiently certain to be identified. *Addington* v. *Jones*, 7 Jones, 582. A competent surveyor could unquestionably run so far northwest that by letting fall a south line to Bridgeman's line, and running thence east with the line to Jack's creek, and with Jack's creek to the beginning, the lines so located by him, together with the lines previously known, would embrace one hundred and fifty acres. *Cox* v. *Cox*, 91 N. C., 263; *Stewart* v. *Salmonds*, 74 N. C., 518. As suggested by Chief Justice PEARSON in the case last cited, the surveyor could fix the location in a crude but practical way by laying off experimental lines on a plot before going into the field, or, with a knowledge of higher mathematics, could determine the location of the line by proper calculation, with absolute certainty. *Id certum est quod certum reddi potest.* This maxim embodies the test to be applied in all such cases. By running northwest to S, on the plot,

then south to P, on Bridgeman's line, then east to C, which is Bridgeman's corner at the creek, then down Jack's creek to the beginning and including precisely 150 acres in the boundary, the surveyor has practically demonstrated the feasibility of locating the land according to the alternative description, and at the same time carrying out the expressed purpose of the grantor to convey 150 acres. It appears, too, in evidence that neither the northwest, the south or the east line could have been prolonged or shortened without so readjusting them as to embrace either more or less than the prescribed quantity. Moreover, if the northwest line had been extended much further, as plaintiff contended was the correct running, the south line would have failed to intersect with Bridgeman's east and west line, passing entirely west of it; while if it had been extended not over 100 poles, as we have seen, the south line would have passed to the east of the said line. The location adopted by the jury under the instruction of the Court fills another requirement of the deed by disregarding course and running a natural boundary, Bridgeman's line. According to the plaintiff's contention defendants' deed covered only 38.2 acres, and according to plaintiff's view it embraced 402 acres; but by adopting the line indicated by the Court, the leading purpose of the grantor to include 150 acres by locating the northwest and south lines with that end in view, was complied with in the only way consistent with a due regard for the residue of the description.

It is settled law that where the calls of a *mesne* conveyance are clear enough to be comprehended and located by extrinsic testimony, that location cannot be changed by a parol agreement between coterminous owners, unless it related to the running and marking contemporaneous with the making of the deed. *Caraway* v. *Chancy*, 6 Jones, 361. The instruction asked that the marking of a line two years after the land was conveyed to C. F. Guilford, in 1873, by said

Guilford and S. T. Carrow, was evidence to establish the true location, was properly refused.   By running the line so as to include 150 acres, a portion of the land in the actual possession of the defendants when the action was brought, is left outside and falls within the boundary to which the plaintiff has shown title.   The plaintiff was therefore entitled to recover.   There is, therefore, no error.

Affirmed.