A. W. SHAFFER v. BRYAN GAYNOR.

*Trespass Quare Clausum Fregit—Boundary—Evidence
—Reputation—Hearsay—Declarations of Owner of
Land—Adverse Possession, what Constitutes—Recital
in Deed by Trustee Prima Facie True.*

1. Evidence by reputation and hearsay evidence are both competent, where the issue involves a question or private boundary, but it is necessary to show, preliminary to the introduction of hearsay testimony, that the person, whose statement it is proposed to prove, is dead, because if alive the law requires that he be produced.

2. The general rule is subject to the single exception that it is not competent to prove, by general reputation, the location of a tract of land or premises claimed inside of another grant without showing some monument of title, such as a tree, generally reported to be the claimant's corner or a line up to which it is generally reported that he has held possession with the acquiescence of others.

3. Occassional acts of ownership, such as entering upon land susceptible of cultivation and cutting board timbers, do not constitute possession, that will mature title, but in order that a possession shall be held sufficient for that purpose the claimant must expose himself to an action in the nature of trespass in ejectment, as distinguished from trespass *quare clausum fregit*, continually during the whole statutory period, by subjecting some portion of the disputed land to the only use of which it is susceptible or by the actual occupation of a house or the cultivation of a field, however small, according to the usages of husbandry.

4. A deed is a contract and the leading object of the courts in its enforcement, where the controversy involes a question of boundary, is to ascertain the precise lines and corners as to which the minds of grantor and grantee concurred. Hence, though parol proof is not as a rule admissible to contradict a plain written description, it is always competent to show by a witness that the parties by a contemporaneous, but not by a subsequent survey, agreed upon a location of lines and corners, different from that ascertained by running course and distance.

5. The declarations of a deceased land owner, made in his own interest, are no more competent when they relate to the boundaries of land than when they refer to other subjects ; but the declarations of parties to actions are always admissible in evidence against, though not for them.

6. The general rule is, that declarations made by one in possession of land in disparagement of his own title or characterizing or explaining his claim of ownership are competent as evidence as well against those claiming under the declarant as against him. But as to declarations made subsequent to the execution of the deed, the rule is subordinate to the law of evidence which prohibits the contradiction of a written contract by parol testimony and cannot therefore be extended so far as to allow one in possession, even by a declaration against his own interest, to contradict a plain unambiguous description of course and distance, contained in a deed previously executed.

7. The recitals in the deed made by the trustee to the bank are *prima facie* deemed correct in so far as they show that the sale was made by the trustee in pursuance of the power contained in the deed of trust.

(Syllabus by AVERY, J.)

ACTION of trespass *quare clausum fregit*, commenced in March, 1886, and tried before *Boykin, J.*, at February Term, 1895, of BEAUFORT Superior Court. The plaintiff alleged possession in himself of the lands described in the complaint and deduced title from John C. Blake, Trustee, to whom one S. C. Carrow had executed a deed in trust with power of sale. The lands had been bought by Carrow in 1872 at execution sale against Noah W. Guilford issued on judgments rendered prior to 1868. The defendant asserted title to the land upon which the trespass was alleged to have been committed. In his further defence the defendant alleged "that during or about the months of April or May, 1872, while the said S. T. Carrow was in the possession of the lands described in the complaint, excepting that claimed by this defendant, the said Carrow and this defendant had their lands surveyed and agreed upon the lines

separating their lands and had the same distinctly marked. That from that time until the beginning of this suit the said Carrow and those claiming under him have always acknowledged and recognized the said line and have asserted no claim to the lands claimed by this defendant.

On the trial the plaintiff, in locating his deed covering the *locus in quo*, was permitted by the Court, after objection by the defendant, to show that a sweet-gum at the edge of Jacob's Creek was by general reputation in the neighborhood known as Bond's corner.    This is the first error complained of.

The defendant claimed under one G. W. Guilford, trustee for G. A. Guilford.    Carrow in 1872 had a survey of the lands claimed by him, and on that survey Carrow marked a gum in the southern line of his (Carrow's) land, as fixed by his (Carrow's) deed and marked a line from the gum north, at the time saying that the gum was the corner of Graham Guilford's land, and that line was the line between them.    Upon objection by plaintiff this testimony was ruled out, and defendant excepted.

Defendant offered to show that S. T. Carrow, under whom plaintiff claimed, prior to the conveyance by Carrow, agreed to execute a deed to Graham Guilford, but that in consequence of Carrow's being involved he thought it best that the deed should be made by N. W. Guilford alone.    Upon objection by plaintiff this testimony was excluded.

Defendant offered to show that he cut and carried a raft of timber off the land in controversy to Washington, and that Paul Lincke prevented a sale of this raft.    This with the view of showing damages.    Upon objection, testimony excluded, and defendant excepted.    There was no evidence that Lincke was the agent of plaintiff, and the Court excluded the evidence.

117—2

SHAFFER *v.* GAYNOR.

Defendant requested the Court to hold that it was necessary for the plaintiff to show an advertisement and sale under the deed in trust to Blake, independent of the recitals in his deed. The Court declined to so hold, and defendant excepted.

Defendant asked the Court to charge the jury that the sheriff's sale was void, for that no homestead was laid off. The Court declined so to do, as the judgments under which the land was sold were on debts created prior to 1868, or some of them were. Defendant excepted.

The defendant relied upon color of title and possession to defeat plaintiff's title.

The court charged that there was no sufficient evidence of possession for such a length of time as would ripen defendant's color of title into title. Defendant excepted.

This land was all woods land; it was not cleared, fenced or cultivated.

The defendant testified to the following acts, which were alleged to show possession sufficient to ripen color of title into title:

In 1872, a survey of the land; in 1873, Colonel Carrow cut timber on the land from the latter part of the summer until nearly Christmas, under Guilford; in 1874, one Watt Lewis, by authority of Guilford, got two trees for boards; in 1875, Eli Moore made boards on the land; in 1876, John Brown got some large trees for ship timber; in 1877, Simon Whitehurst worked up two trees, cut down by Brown, into boards; worked on them off and on for four weeks; in 1878, in the spring, a road was surveyed across the land, and in the fall partly cut out; in the fall of 1879, Mack Smith got some staves on the land; in 1880, the defendant got oak timber; he began in January, got some in January, February and March, and then quit and began cutting again in September; paid one-fourth rent, and the

rent amounted to ten dollars; in 1881, Peyton Taylor worked on the land to the same extent as defendant had done in 1880; in 1882, defendant got four sills for a ginhouse off the land; in the fall of 1883, I rented some ginhouse timber to one C. W. Bonner; he paid me two dollars rent; in 1884, one Rollins got some flat knees; worked off and on from summer until about September; in 1885, the defendant bought the land, built a cabin on the land and occupied it for his hands in getting off timber.

The suit was brought in 1886.

This is all of the evidence of possession except that during the fall and winter of every year the defendant would haul a load of lightwood knots and dead tree tops, and occasionally cut up a dead pine stump or tree, cutting in all fifteen or twenty trees.

The court charged the jury that there was not sufficient evidence of possession for a sufficient length of time to defeat plaintiff's title.

There was verdict for the plaintiff and from the judgment thereon the defendant appealed.

*Messrs. W. B. Rodman* and *J. H. Small*, for plaintiff.
*Mr. Chas. F. Warren*, for defendant (appellant).

AVERY, J. : In the discussion of the admissibility of evidence by reputation and of hearsay evidence, in *Dobson* v. *Finkley*, 8 Jones, 499, Chief Justice PEARSON said: "It is settled law that both kinds of evidence are competent in questions of private boundary in this State. In the latter, to-wit, hearsay evidence, it is necessaary as a preliminary to its admissibilty to prove that the person whose statement it is proposed to offer in evidence, is dead; not on the ground that the fact of his being dead gives any additional force to the credibility of his statement, but on

the ground that if he be alive, he should be produced as a witness, whereas it is manifest that in respect to evidence by reputation, this preliminary question cannot arise." *Harris* v. *Powell*, 2 Hay., 349; *Hartzog* v. *Hubbard*, 2 D. & B., 241.

The rule that testimony by reputation was competent, under any circumstances, to locate the boundaries of land was admitted to be a departure from the English doctrine, which is still adhered to in many of the States, notably by the court of Massachusetts; but the fact that the country had been recently settled and was still but sparsely inhabited and that consequently monuments of title could not be so well known or firmly established, as in an older country, seems to have been ample justification for a modification which adapted the rule to the reason. The fact that the courts of Tennessee and of Kentucky, where the conditions were similar, followed the ruling in this State, is additional evidence of the necessity for the change *Sasser* v. *Herring*, 3 Dev., 342; *Bond* v. *Talbott*, I. Cooke, 142; *Smith* v. *Arwells*, 2 Littell, 159; I Greenleaf, Sec. 145, note on pp. 194 and 195.

The newly adopted principle was subject however to the single restriction that it was not competent to show a general reputation that the premises claimed were located within the limits of certain grants without any evidence as to monuments of title though the claimant was permitted to prove that particular landmarks, such as trees, streams or lines constituted, according to the general report, parts of his boundary, or that he held possession with the acquiescence of others up to a known line, *Mendenhall* v. *Cassels*, 3 Dev. & Bat., 49.

The exception, therefore, to the testimony of the witness Whitehurst that there was a general reputation in the

neighborhood that the sweet gum at 12 was Bond's corner, is without merit.

"Occasional acts of ownership, however clearly they may indicate a purpose to claim title and exercise dominion over land, do not constitute a possession that will mature title." *Ruffin* v. *Overby*, 105 N. C., 78; *Asbury* v. *Fair*, 111 N. C., 251; *Hamilton* v. *Icard*, 114, N. C., 532. A possession that ripens into title must be such as continually subjects some portion of the disputed land to the only use of which it is susceptible or it must be an actual and continuous occupation of a house or the cultivation of a field however small according to the usages of husbandry. *McLean* v. *Smith*, 106 N. C., 172; *Bynum* v. *Carter*, 4 Ired., 310; *Tredwell* v. *Riddick*, 1 Ired., 56; *Cox* v. *Ward*, 107 N. C., 507; *Hamilton* v. *Icard, supra*. The test is involved in the question whether the acts of ownership were such as to subject the claimant continually during the whole statutory period to an action in the nature of trespass in ejectment instead of to one or several actions of tresspass *quare clausum fregit* for damages. *Hamilton* v. *Icard, supra,* pp. 536 and 537; *Osborne* v. *Johnston*, 65 N. C., 22; *McLean* v. *Smith, supra*; *State* v. *Suttle*, 115 N. C., 784; *Boomer* v. *Gibbs*, 114 N. C., 76. The digging of ditches and constructing roads through Swamps for the purpose of getting shingles, when it appeared affirmatively that the swamp lands were susceptible of no other use, was such an assertion of ownership as subjected the occupant to an action of possession, as was the continuous getting of turpentine on a pine barren worthless for any other purpose (*Tredwell* v. *Riddick*, 1 Ired., 56; *Bynum* v. *Carter*, 4 Ired., 310); and these two cases mark the extreme limit to which this Court has gone. The testimony in this case was similar to that offered in *Ruffin* v. *Overby*, and several others that we have cited. The acts of dominion

consisted of cutting board timber some time during a particular year on a piece of woodland ; but there was no evidence to show that they were continuous or if they were, that the land, though while covered with timber it was not susceptible to other use, might not have been cleared and cultivated, regardless of its capacity for profitable production. There was no error therefore in instructing the jury that such acts were not an assertion of the right that would mature title.

The sweet-gum at 12, had, it seems, been marked by S. T. Carrow, as a pointer to show where a stake called for as a corner was located. The marking was done in the progress of a survey made by one S. T. Roberson, to determine the location of the line between Carrow's land and that of Noah W. Guilford. The plaintiff claimed through S. T. Carrow, to whom the Sheriff of Beaufort County Conveyed, by virtue of a sale under execution of the lands of Noah W. Guilford, on the 6th of January, 1872. Plaintiff exhibited mesne conveyances, including deed of trust from Carrow to John C. Blake, deed from Blake, trustee, to the First National Bank of Raleigh, and from the bank to the plaintiff, dated October 31st, 1883.

The defendant claimed under a deed from N. W. Guilford to George W. Guilford, trustee for Graham A. Guilford, dated May 23, 1872. It was in evidence that this survey was made between the date of the deed of Satchwell, Sheriff, to Carrow and that of Noah W. Guilford to George Guilford, trustee, and at some time in the spring of 1872. S. T. Carrow was at the time of the survey in possession under the Sheriff's deed.

A deed conveying land is a species of contract, in the enforcement of which the leading purpose of the courts, where the controversy involves a question of boundary, is to ascertain the precise lines and corners as to which the

minds of grantor and grantee concurred. Parol proof of course is not as a general rule admissible to vary or contradict a plain written description, but it is always competent to show where the parties located the lines and corners by a cotemporaneous survey in order to define more exactly what was intended to pass. *Cherry* v. *Slade*, 3 Mur., 82. The survey made under such circumstances is intended, in contemplation of law to reduce to a certainty, what the courts would have held sufficiently definite for enforcement as a contract without a survey, only when it appeared that by running from an established point called for according to the description contained in the deed, a definite boundary would be embraced within the lines. Hence, it is held competent to prove that a cotemporaneous but not a subsequent survey located a corner at a place different from that ascertained by following course and distance. The corner was located by means of the Gum pointer and the line was marked by Carrow not cotemporaneously or with a view to the subsequent execution of the conveyance by Noah W. Guilford to George Guilford, trustee, and the law does not therefore impute to the parties the intent to contract with reference to the survey merely because it had been made before the date of the deed. Admissions made in the progress of a survey subsequent to the date of the deed executed to George Guilford or even a parol agreement to mark the lines and corners in a certain way, would not have been competent to show that a line or corner was located otherwise than where a definite description contained in the deed would locate it, because the effect would be to contradict or vary a written contract, upon its face free from ambiguity, by a subsequent verbal agreement entered into without consideration. *Caraway* v. *Chancey*, 6 Jones, 361; *Buckner* v. *Anderson*, 111 N. C., 572; *Shaffer* v. *Hahn*, 111 N. C., 1. It is

equally clear that the testimony is not competent as proof of an act accompanying the delivery of a deed and constituting a part of the *res gestae,* so as to bring the case (in accordance with the contention of counsel) within the reason of the ruling in *Roberts* v. *Preston,* 100 N. C., 243.

Though Carrow is dead, his declarations made in his own interest would be no more competent when they relate to the boundaries of land, than when made in reference to other subjects. *Heddrick* v. *Gobble,* 63 N. C., 48 ; *Ray* v. *Pearce,* 84 N. C., 485 ; *Roberts* v. *Roberts,* 82 N. C., 29. But the declarations of parties to suits are always admissible evidence against, though not for, them. *McCrainey* v. *Clark,* N. C. T. R., 278 (698) ; *McDonald* v. *Carson,* 95 N. C., 377 ; *Gidney* v. *Moore,* 86 N. C., 484 ; *Avent* v. *Arrington,* 105 N. C., 377.

If the declaration of Carrow would have been competent against him as plaintiff in this action, it would be competent under the general rule applicable to all classes of cases against the plaintiff, who claims through him. *May* v. *Gentry,* 4 Dev. & Bat., 117 ; *Woodley* v. *Hassell,* 94 N. C., 157 ; *Braswell* v. *Gay,* 75 N. C., 515. It has been frequently held, too, that where declarations are made by one in possession of land, characterizing or explaining his claim of ownership, or in disparagement of his own title, they are competent as evidence not only against the declarant, but against all claiming under him. *Gay* v. *Hall,* 3 Murp., 150 ; *Kirby* v. *Maston,* 70 N. C., 540 ; *Marsh* v. *Hampton,* 5 Jones, 382 ; *Mebane* v. *Bullard,* 82 N. C., 23 ; *Nelson* v. *Whitfield,* 82 N. C., 46 ; *Pearce* v. *Jenkins,* 10 Ired., 355 ; *Peck* v. *Gilmer,* 4 D. & B., 249 ; *Cansler* v. *Fite,* 5 Jones, 424. If, however, the declaration of Carrow, made even against his own interest, was offered to contradict a plain, unambiguous description, it was clearly incompetent under the principle laid down in *Shaffer* v.

*Hahn* and *Buckner* v. *Anderson, supra.* It appears that while there is no description of the disputed line given in the deed from N. W. Guilford to George Guilford, trustee, except by reference to Carrow's line and the lines of other adjacent tracts, it purporting to cover the land bounded by the lines of Carrow and others, the surveyor ran the several calls of Carrow's deed, or the deed to which it refers for description, either by course and distance, or to establish corners from the beginning to a pine, at fig. 7, known as the "proved pine," and thence according to the course and distance of the deed, South 46 West 313 poles along an old marked line, the distance giving out at 8, though no gum was there found. The other calls were also run by course and distance, or to known corners at stations 9, 10, 11, and back to the beginning at fig. 1. Is Carrow's declaration admissible to control a well defined description and an undisputed survey by course and distance? The general proposition that the declarations of one in possession in disparagement of his own right is admissible as against all who claim through or under him, is, of necessity, subordinate to the more important rule that an unambiguous written description, which is the best evidence of the nature of the contract between the parties, and an undisputed location by a survey in accordance with the running from known corners by course and distance, cannot be contradicted by more uncertain proof of declarations by a former owner while in possession, which, if acted on, would require an utter disregard of course and distance. If, as the surveyor testifies, by running from a known corner at the beginning, either to established corners or by course and distance, according to the calls of the deed to an admitted corner at 7, and thence by course and distance he located the plaintiff's Gum corner at 8, it is not competent to contradict that description which, from

known or admitted data, fixes the corner with mathematical certainty by the survey there, by a declaration made by the grantee under a mesne conveyance, while in possession. The beginning corner was not disputed, and courses and distances from it inevitably carried the surveyor to 7, which the defendant admitted was a corner which he made the point of departure in the controversy about the next line. The calls following chain and compass, as was not disputed, would run from 7 to 8, 9, 10, 11, and 1, so as to include the land trespassed upon and the whole boundary claimed by the defendant, except the triangle 8, 9, F. It is plain, then, that to give to the proof of Carrow's declaration the effect of cutting off 300 acres by running from 7 to E, would be to contradict, by hearsay evidence, the description, which from admitted data and by a survey, the correctness of which was not questioned, appears to cover the *locus in quo* and fix the plaintiff's boundary, as claimed by him. The case was somewhat confused in the argument by leaving the impression that there was doubt about the location of plaintiff's calls, whereas it was the description of the defendant's title which called for plaintiff's line and the lines of others, so as to include what was not embraced by the deeds of either of them. We think, therefore, that there was no error in excluding the testimony as to Carrow's declaration. The verbal agreement of Carrow to join N. W. Guilford in the conveyance to George, which was not carried out, because of Carrow's embarassment in part by the mortgage through which plaintiff claims, was utterly void in any aspect. There is as little force in the exception to the refusal of the Judge to admit the testimony that Paul Lincke, plaintiff's agent, prevented the sale of a raft.

The recitals in the deed from the trustee to the bank are deemed *prima facie* correct in so far as they

show, that the sale was made by the trustee in pursuance of the power contained in the deed of trust. *Shaffer* v. *Hahn*, *supra*. The executions under which the land was sold as the property of N. W. Guilford and bought by Carrow, issued upon debts created before the year 1868. The title passed to the purchaser therefore discharged of all liability to allotment as a homestead. *Long* v. *Walker*, 105 N. C., 90.

Upon a careful review of all the exceptions, we conclude that the judgment must be affiirmed.

Affirmed.