A. J. HEADEN and others v. J. A. WOMACK and others.

*Statute of Presumptions—Abandonment of Claim to Land—Evidence—Declarations of Grantor.*

1. The statutory presumption of abandonment of an equitable claim to land, arising within ten years after the right of action accrues, is fatal to the plaintiffs upon the facts of this case. Rev. Code, ch. 65, § 19.

2. The declarations of a grantor, made at any time before a sale of land, are admissible against the grantee and those claiming under him ; but otherwise, when they are made after the declarant has parted with the title and possession.

(*Ingram* v. *Smith*, 6 Ired. Eq., 97 ; *Hamlin* v. *Mebane*, 1 Jones' Eq., 18 ; *Hodges* v. *Council*, 86 N. C., 181 ; *Blake* v. *Lane*, 5 Jones Eq., 412 ; *Brown* v. *Becknall*, *Ib.*, 423 ; *Gray* v. *Harrison*, 2 Hay., 292 ; *Arnold* v. *Bell*, 1 Hay., 396 ; *Askew* v. *Reynolds*, 1 Dev. & Bat., 367, cited and approved).

CIVIL ACTION tried at Spring Term, 1882, of CHATHAM Superior Court, before *Graves, J.*

This action was begun on the 17th day of August, 1880, and the plaintiffs seek to enforce the specific execution of a contract for the purchase of land, entered into between their ancestor, Mrs. Margaret Headen, and George W. Goldston, under whom the defendant, Wiley, claims the land as a purchaser, the other defendants being his heirs-at-law.

The contract bears date the 10th day of December, 1850, and after reciting the fact that the said Goldston was the guardian of the children of the said Margaret, and had purchased the land for her at the price of one hundred dollars, and had also advanced to her a like sum to enable her to raise her children, it obliged him, in case these sums were allowed him in his final settlement with the children, so as to re-imburse him for the principal and interest of his outlay, to convey the said land to her in fee upon the coming of age of her youngest child.

On the trial, the evidence tended to show the following state of facts : Margaret Headen was in the possession of the land at

the date of the contract in 1850, and continued to occupy it until her death in June, 1862. Her children then occupied it until 1867, when they quit the possession, removing the house that stood upon it, and have never since resumed the possession. Her youngest child became of age in 1861, and soon thereafter intermarried with the plaintiff, James White. Upon her coming of age, her guardian attempted to settle with her, when her husband objected to her being charged with any portion of the sums advanced to her mother, but it was not shown how the settlement was made.

In April, 1862, Goldston sold and conveyed the land to the Sapona Iron Company, which immediately took possession of that part of the land not then occupied by Mrs. Headen and her family, and continued to hold it until 1869, when it was sold under an execution against the said company and purchased by the defendant, Wiley, who took possession of the whole and has continued to hold it ever since.

In 1862, the said Margaret, hearing that Goldston was about to sell the land, gave the contract which she held to one Brooks, and requested him to lay it before some attorney and take his advice with regard to it, which was done.

One Murdock, who was a member of the Sapona Iron Company, and who mainly conducted the negotiations for the purchase of the land with Goldston, denied that he, or the company, had any notice of Mrs. Headen's claim upon the land at that time, but that he heard of it afterwards, in 1874.

In charging the jury, after telling them that the possession of Mrs. Headen, at the time of the sale to the Sapona Iron Company, was in itself notice of her claim to the company, and that as the defendant, Wiley, was a purchaser at execution sale, he took subject to all equities, His Honor further instructed them, that if they believed the facts to be as above set out, then the law presumed an abandonment by the plaintiffs of their claim to the land, and they should therefore find for the defendants.

The plaintiffs excepted. Verdict and judgment for the defendants. Appeal by plaintiffs.

Mr. J. H. Headen, for plaintiffs.
Mr. John Manning, for defendants.

RUFFIN, J. Several very interesting questions were raised upon the trial of this cause in the court below, as well as in the argument of counsel at this bar, but it is not deemed necessary to advert to them, since the court considers the point, upon which the case was at last made to turn, as perfectly conclusive against the plaintiffs.

The statute enacts, that a presumption of abandonment of every equitable interest shall arise within ten years after the right of action thereon shall have accrued. Rev. Code, ch. 65, § 19. Its obvious policy, as said in Ingram v. Smith, 6 Ired. Eq., 97, is to insist peremptorily on diligence in all cases to which it has any application, and it is one which the courts must fairly carry out. So emphatically is it a statute of repose, that no saving is made in it of the rights of infants, femes covert, or persons non compos. Hamlin v. Mebane, 1 Jones' Eq., 18; Hodges v. Council, 86 N. C., 181. Like the presumption of payment arising upon a bond under the act of 1826, that of the abandonment of a claim may become, and does become, when the facts of the case are admitted, a conclusion of law from facts, to be applied by the court, and not left to the discretion of· the jury. Blake v. Lane, 5 Jones' Eq., 412; Cluggage v. Duncan, 1 Sergt. and Rawle, 109. So, likewise, is it a question of law for the court, what circumstances, if true, are sufficient to repel the inference created by the lapse of time under the statute. Brown v. Becknall, 5 Jones' Eq., 423.

So far from there being anything in the case to repel or even to impair this statutory presumption of abandonment of their claim to the land, the very facts upon which the plaintiffs rely seem to the court to strengthen and sustain it, as being true in

fact. The contract which their mother made for the land was, at the outset, but a conditional one, and depended upon their ratification of it at the coming of age of the youngest child. When that event took place, or shortly thereafter, the parties are proved to be in a dispute about the matter, and it is not shown how they finally settled. They took the advice of counsel; submitted to a sale of the land to another; voluntarily surrendered the possession; taking care to remove the house they had erected thereon, and for full twelve years have taken no steps to assert their title or renew their claim. Such conduct cannot fail to satisfy every mind that what the law presumes, in fact took place, and that they then really abandoned their right; and very certainly that state of the facts warranted the instructions that were given to the jury.

We fully concur with His Honor also upon the point of evidence that arose in the case. The declarations of a grantor, made at any time before the sale, are admissible against his immediate grantee, and all who remotely claim under him. But all the cases agree, says 2 Phil. on Evidence, 655, that declarations made by the person under whom a party claims, after the declarant has departed with his right and the possession, are utterly inadmissible to affect any one claiming under him; and to this effect are the authorities in this court. *Gray* v. *Harrison,* 2 Hay., 292; *Arnold* v. *Bell,* 1 Hay., 396; *Askew* v. *Reynolds,* 1 Dev. and Bat., 367.

The court, therefore, sees no error in the judgment of the court below.

No error.                              Affirmed.