J. H. MAGEE v. M. E. BLANKENSHIP *et als.*

*Evidence—Declarations—Statute of Frauds.*

1. The declarations of the owner of land, made while in possession, in derogation of his title, are evidence both against him and one claiming title under him.

2. *It seems*, that declarations made after the execution of a deed, but while the grantor remains in possession and exercising proprietary rights are admissible in evidence against the vendee.

3. In an action for specific performance, where the defendant sets up a claim for compensation for improvements put on the land, evidence is admissible to show the enhanced value of the lot, by reason of improvements put on it by the defendant.

4. Evidence in writing, when the writing contains all the stipulations assumed by the person to be charged, and authenticated by his signature, is a compliance with the statute of frauds.

5. So, where parties agreed by parol to exchange lands, and afterwards one of them executed a deed to carry it out; *It was held*, that the deed was a sufficient writing within the statute.

6. A parol contract to convey land is not void if not reduced to writing, and if it is afterwards reduced to writing, it removes the statutory impediment and imparts to the contract an original efficacy.

(*Guy* v. *Hall*, 3 Murph., 150; *Johnson* v. *Patterson*, 2 Hawks, 183; *Satterwhite* v. *Hicks*, Busb., 105; *Headen* v. *Womack*, 88 N. C., 468; *Hil-*

MAGEE v. BLANKENSHIP.

*liard* v. *Phillips*, 81 N. C., 99 ; *Blacknall* v. *Parish*, 6 Jones Eq., 70 ; *Bonham* v. *Craig*. 80 N. C., 224 ; *Foust* v. *Shoffner*, Phil. Eq., 242 ; *Green* v. *The Railroad*, 77 N. C., 95 ; *Mizzell* v. *Burnett*, 4 Jones, 249, cited and approved).

CIVIL ACTION, tried before *Graves, Judge*, and a jury, at Spring Term, 1885, of the Superior Court of HALIFAX county.

The action, commenced against P. E. Blankenship, is to recover possession of a lot in the town of Weldon, in his occupation, which formerly belonged to N. M. Long, who conveyed it to Annie T., wife of Lawrence F. Larkin, and the two last named, on December 1st, 1880, made a deed therefor to the plaintiff. The said Blankenship died before answering, and Mary E., his widow, and William Blankenship, his son, and sole heir at law, an infant, are made parties defendant in his stead.

The said William, by his guardian *ad litem*, puts in an answer denying the plaintiff's claim, and setting up an equitable defence of the following import:

He alleges that his deceased father owned another lot in Weldon, described in the answer as bounded by Second street, North street, and the lands of L. J. Pair, which, under an agreement with said Lawrence F. Larkin, was to be exchanged for that now in suit, and each party to secure and pass a good title to the lot to be conveyed; and the deed of conveyance from Blankenship to be made to the wife of the said Lawrence F., the latter contracting in equalizing values, to furnish the lumber needed to erect buildings on the lot in suit, and to obtain title thereto from said Long; that in pursuance of said agreement, the said Blankenship delivered possession of his lot to said Annie T., and received possession of the other from Larkin, and with the materials furnished by him, put up buildings thereon, which, in his estimation, have enhanced the value thereof more than one

thousand dollars; that Long, consenting to the occupation, soon after executed a deed for the premises to said Lawrence F. at his instance and direction, and the latter made a deed therefor to said Blankenship, which was left with his wife, and by her destroyed; that said Lawrence, at his wife's instigation, then surrendered Long's deed to him, and procured the execution of another for the lot to said Annie T., and this is alleged to have been done to defraud the said Blankenship, who remained in possession of the lot so improved up to the time of his death, while Larkin also continued in possession of the lot taken in the exchange, and as if owner, conveyed the same by mortage on March 10th, 1879, to William H. Day, to secure liabilities therein recited and set out; that the said Annie T. was well aware of the agreement for exchange and the action of the parties in furtherance of it, as was the plaintiff, to whom the deed was made as a mere cover and device to complicate the controversy and embarras the said Blankenship, and that Larkin and wife have moved from the State, and their residence is unknown. The plaintiff in his replication controverts all the allegations of fact out of which the defendants asserted equity arises.

Issues were submitted to the jury, which with the responses, are set out in the judgment, as follows:

"1. Did L. F. Larkin agree in writing to convey the land in controversy to P. E. Blankenship? Answer: Yes.

"2. Did L. F. Larkin pay N. M. Long the purchase money for the *locus in quo*? Answer: Yes.

"3. Did L. F. Larkin sign and execute a deed to the *locus in quo* to P. E. Blankenship? Answer: Signed, but did not execute.

"4. Was such paper writing from L. F. Larkin to Blankenship destroyed by Annie T. Larkin? Answer: Yes.

"5. Did Annie T. Larkin join with her husband in executing Exhibit 'A'? Answer: Yes.

"6. Has Annie T. Larkin received the rents from the place

on Second street from March, 1877, till January, 1882, claiming the said property as her own? Answer: Yes.

"7. Did J. H. MaGee have notice of the claim of the defendants at the time of his purchase? Answer: Yes.

"8. Has P. E. Blankenship made permanent and valuable improvements on the *locus in quo* by which the value of said lot is enhanced? Answer: Yes.

"9. How much, if any, is the value of said lot enhanced by permanent improvements put on it by the defendant? Answer: $1,066.

"10. What was the annual rental value of Blankenship place? Answer: $120 per annum.

"11. Did L. F. Larkin procure the deed from N. M. Long to be made to his wife with the intent to defraud P. E. Blankenship? Answer: It does not appear in evidence.

"12. Is the plaintiff the owner in fee simple of the land described in the complaint? Answer: Yes.

"13. Do the defendants wrongfully detain possession of said land from the plaintiff? Answer: No.

"14. What damages has the plaintiff sustained by reason of such detention of possession? Answer: $120 per annum.

"The three last issues submitted by the plaintiff."

On this verdict, the Court gave the following judgment:

"It is ordered, adjudged and decreed that the plaintiff, Jas. H. MaGee, holds the real estate in the complaint specified and described, as a trustee for L. F. Larkin; and it is further ordered and decreed that the said Jas. H. MaGee execute and deliver to the defendants a deed in fee simple for the real estate in the complaint described. It is further ordered and decreed that the defendant Mary E. Blankenship and the defendant Jno. T. Gregory, guardian *ad litem* to the infant defendant, William Blankenship, execute to L. F. Larkin a deed in fee simple to the real estate on Second street, in the town of Weldon, North Carolina, which is fully described in the defendants' answer, and that said deeds be

recorded in the office of register of deeds for Halifax county, North Carolina; and it is further adjudged that the defendants recover of the plaintiff and his prosecution bond the costs of this acion, to be taxed by the clerk."

From this judgment the plaintiff appealed.

*Mr. R. O. Burton*, for the plaintiff.
*Mr. W. H. Day*, for the defendants.

SMITH, C. J., (after stating the facts). These recitals prepare the way for our entering upon an examination of the plaintiff's exceptions to the ruling of the Court.

*1st Exception.* All the issues offered for the plaintiff were submitted to the jury, accompanied with a remark from the Court in regard to the second of the series, that the response would so much depend upon the findings upon the series presented by the defendants, that it might be that the jury would not have to pass upon them at all, and to that extent the plaintiff's issues were reserved. This exception is not intelligible in view of the fact that the plaintiff's issues were, each of them, submitted to and answered by the jury. There is, then, some inadvertence, through which an exception, proper at the time, finds its way into the case, after the grounds of it are removed.

*2d Exception.* Several witnesses were allowed, after objection from the plaintiff, to testify to declarations of said Annie T., to the effect that her husband had prepared a deed conveying the lot to Blankenship, the ancestor, signed by himself, and handed to her for her signature, with a view to its execution, and that she had burned it up. One witness says this declaration was made soon after her husband left the county in November, 1879; while another heard a similar remark from her about December, 1880, and before she left. As their deed to the plaintiff was made on December 1st, 1880, (and there seems to be some uncertainty about

these dates, for Larkin must have been here to unite with
said Annie T. in making that deed, and could not have per-
manently departed, as the case states, more than a year
before), the conversations deposed to must have been made
at or before the making of that deed, and while, under
Long's deed, the legal title had been put in her. In such
case, the evidence would fall under the rule declared in *Guy*
v. *Hall*, 3 Murph., 150; in the opinion in which case, Hen-
derson, J., speaking of the persons who make the statement,
says: "It is therefore evidence *against him*, and his subse-
quent purchaser stands in his situation; for he cannot better
his title by transferring it to another, or *thereby affect the rights
of those who have an interest in his confessions.*" To the same
effect, see *Johnson* v. *Patterson*, 2 Hawks, 183; *Satterwhite* v.
*Hicks*, Busb. L., 105; *Headen* v. *Womack*, 88 N. C., 468.

The declaration, if made after the execution of the deed
to the plaintiffs, the said grantors remaining in undisturbed
possession, and exercising the same proprietary rights over
the property as before, may perhaps be admissible under the
decision in *Hilliard* v. *Phillips*, 81 N. C., 99; but we propose
to put the competency upon the other ground.

*3d Exception.* The plaintiff objected to the hearing of any
testimony as to the enhanced value imparted to the lot by
improvements put upon it during the defendants' occupancy.
We think this was proper in measuring the extent of the
defendants' equitable claim to compensation, in the event of
the Court's refusal to recognize the contract and the right to
to a specific performance of it, and this is directly called for
in defendants' 8th, 9th and 10th issues.

*4th Exception.* The remaining exception is based upon the
fact that the exchange was not under a written contract, and
moreover, if the destroyed deed could constitute a memoran-
dum within its requirements, its execution in November,
1879, could not relate back and effect the title vesting in said
Annie T. in 1877. We are of opinion that this deed, which

was drawn in executing the contract, and therefore must have embodied all of Larkin's part of the agreement, was a satisfaction of the demands of the statute, and so in substance it is held in *Blacknall* v. *Parish*, 6 Jones Eq., 70.

Evidence in writing, when the writing contains all the stipulations assumed by the person to be charged, and authenticated by his signature, is a compliance with the law. In *Barry* v. *Coambe*, 1 Peters, 640, in an account stated, were these words: "By my purchase of your ½ E. B. wharf and premises, this day agreed on between us," the credit being carried out in figures, $7,578.63, and deducted from the amount charged to Barry, followed by a memorandum thus: "Balance due G. Coambe, fifteen hundred dollars, payable in one, two and three years, with interest," with his signature, "G. Coambe." This was held a compliance with the statute, because all the essential elements were found in the entry. "It is written evidence," says the Court, "which the statute requires, and a note or letter, and even in one case a letter the object of which was to annul the contract, on a ground really not unreasonable (3 Atk., 12; 1 Sch. & Lef., 22), has been held to bring a case within the provisions of the statute." "There have been cases," remarks Lord Chancellor Hardwick, in *Welford* v. *Beaseley*, 3 Atk., 12, "where a letter written to a man's own agent, and setting forth the terms of an agreement as concluded by him, has been deemed to be a signing within the statute and agreeable to the provisions of it."

So, in pursuance of the ruling in this case, it has been held, that a writing in terms intending to be a conveyance of lands, but which, not being by deed, cannot operate as such, is and may be considered an agreement. *Rex* v. *Redgewell*, 6 B. & C., 665.

The next inquiry is, as to the rights of said Annie T. to retain the property under her deed. The jury say that her

husband's money paid for the land, and that she destroyed her husband's deed to Blankenship therefor. Her title was subsequent to this, and therefore taken with notice of the terms of the exchange. Moreover, they undertake to dispose of the lot of Blankenship in recognition of the exchange. The contract is not void, *ipso facto*, because not in writing, the statute relating to the mode of procedure and the evidence required in proof, and a reduction of it to writing afterwards removes the statutory impediment, and, if explicit, imparts to the contract an original efficacy.

Thus, if a contract be made in a foreign country, not required by its law to be in writing, but so required in this, it cannot be enforced in our Courts, because proof only in writing is competent to establish it. *Lenoux* v. *Brown*, 12 C. B., 801; *Bonham* v. *Craig*, 80 N. C., 224; *Foust* v. *Shoffner*, Phil. Eq., 242; *Green* v. *N. C. R. R. Co.*, 77 N. C., 95; *Mizell* v. *Burnett*, 4 Jones, 249.

We think it plain that the wife cannot retain the property conveyed to her under such circumstances, in derogation of the contract rights of Blankenship.

There is no error, and the judgment must be affirmed, except that the plaintiff be required not to convey to the defendants generally, but to the defendant Mary E. a life estate in one-third of said lot, and the other two thirds, and remainder in the one third after her death, to the defendant William.

No error.                                                Affirmed.