CAROLYN S. POWERS v. J. Q. BAKER et al.

(Filed 27 May, 1910.)

1. **Deeds and Conveyances—Foreign Countries—Probate—Title of Officer—Clerical Error.**

   A deed made in England to the *locus in quo*, the evidence showing it was in fact probated before a United States Vice and Deputy Consul General there, but giving the title to the probate officer as "Née" and Deputy Consul, etc., will be adjudged "duly acknowledged," it appearing that the word "née" was a clerical error and intended for the word "vice," as indicated. U. S. Rev. Statutes, sec. 1674; Code, sec. 1245 (4).

2. **Deeds and Conveyances—Foreign Countries—Probate—Validating Acts—Interpretation of Statutes.**

   Revisal, sec. 1024, validating acknowledgment of deeds in foreign countries before "vice consuls and vice consuls general." though not valid against a deed from the same grantor duly registered or a lien against the grantor acquired before the validating act (Laws 1905, ch. 451), is good as against the plaintiff in this action not claiming under the grantor therein.

3. **Deeds and Conveyances—Probate—Defective—Married Women—Title.**

   The exception that there is a defect in the privy examination of a married woman to a conveyance made to the husband's land, is irrelevant in the lifetime of the grantor in an action involving the question of title thereunder.

4. **State's Lands—Entry—New County—Grant—Location—Description Sufficient—Interpretation of Deeds.**

   It appearing that an entry of State's lands was made and definitely located and described as being in a certain county, wherein it was situated at the time, the validity of the grant is not affected by reason of the subsequent creation of a new county by the Legislature, including the *locus in quo*, and the description of the grant following the entry which called for the land in the original county; or by a clerical error in giving the number of the district as No. 6, when from a sufficient description it appears that District No. 9 was clearly intended.

APPEAL by defendants from *Ferguson, J.,* at the Fall Term, 1909, of GRAHAM.

The facts are sufficiently stated in the opinion of the Court.

*A. D. Raby, T. A. Morphew* and *Avery & Avery* for plaintiff. *Dillard & Bell* for defendant.

CLARK, C. J. The plaintiff claims title under a grant No. 3993, issued in 1877 to Joseph L. Stickney, upon an entry No. 6317, made by him 26 February, 1857. Stickney conveyed to the plaintiff by deed executed 1 January, 1880, in London,

Eng. The first exception is that the execution of this deed purports to have been acknowledged before "Joshua Nunn, *Née* and Deputy Consul General U. S. A." "Née" is clearly a clerical error in copying, for "Vice," for the evidence shows that Nunn at that time was "Vice and Deputy Consul General of U. S." in London. He signs himself in above capacity and *"ex officio* notary public." The judge of probate of Graham County adjudged that "the foregoing deed·has been duly acknowledged," and ordered it to registration. The U. S. Rev. Statutes, sec. 1674, in force at that date, provides for "vice" and "deputy" consuls, and section 1750 confers upon every "consular officer" the "authority and powers of a notary public."

The Code of North Carolina, sec. 1245 (4), authorized such acknowledgments to be taken before "any ambassador, minister, consul or commercial agent of the United States." This would seem to include any consul, whether consul, consul general or vice or deputy, in view of U. S. statute, *supra,* giving to every "consular officer" the authority and power of a notary public. It was so held, *Mott v. Smith,* 16 Cal., 533; 1 A. and E. Enc., 506, n. 1. But to make the matter sure, the curative statute, Laws 1905, ch. 451, sec. 2, now Rev., 1024, validates acknowledgments before "vice consuls and vice consuls general." Validating statutes of this nature have always been within the power of the General Assembly, *Tatum v. White,* 95 N. C., 453, though such statute would not be valid against a deed from the same grantor duly registered, or a lien acquired against the grantor, before the validating act. *Barrett v. Barrett,* 120 N. C., 127. But the validation of the probate of a deed from Stickney to the plaintiff would be good against the defendant, who does not claim under Stickney.

The second exception is that there is a defect in the privy examination of the wife of Stickney. If so, she might claim her dower against the plaintiffs if she outlived her husband; but that is a matter that does not concern the defendant.

The land when entered was in Cherokee County. When granted it lay, as the jury finds, in Graham, because that county had been then cut off in 1872 from Cherokee. There is nothing irregular in this. *Harris v. Norman,* 96 N. C., 59, has no application. There the entry and surveys were of land in Watauga, when at the time of the entry and survey the land claimed lay in Mitchell, and had never been in Watauga.

The grant to Stickney is of "640 acres lying and being in the county of Cherokee, section No. ...., in District No. 6, Warrant No. 6317, it being part of the land lately acquired by treaty from the Cherokee Indians, and sold in obedience to an

act of the General Assembly of this State, bounded as follows, viz.: Beginning on a Spanish oak and hickory and runs west with Mauney's line 320 poles to a stake at the corner of E. L. Morron's survey, thence north 320 poles to a rock in Big Snow Bird Creek, thence east 320 poles to a cucumber, thence south to the beginning, as by the plat on file in the office of the Secretary of State." The court properly held that if in fact the land lay in Cherokee when entered and, by reason of the creation of Graham County, it lay in the latter county. when granted, the fact that the grant, following the words of the entry, described the land as being in Cherokee would not invalidate the grant.

There was uncontradicted evidence that Big Snow Bird Creek is entirely in Graham County, and evidence identifying the beginning corner and the location of the land, as claimed by the plaintiffs; but it was in evidence that District No. 6 is still in Cherokee. The plaintiffs contended that this was a mere clerical error for No. 9, in which district their evidence showed that the beginning corner and boundaries actually lay, which district is now in Graham. The court charged the jury: "Now, if you should find from the evidence from the time the survey was actually made that the corner of 6317 was established at the point marked hickory, and the other corners made as called for in the deed at that location, then it would be your duty to answer the third issue yes." The defendant's exception to this charge cannot be sustained. *Higdon v. Rice,* 119 N. C., 623, and cases there cited. In *Houser v. Belton,* 32 N. C., 358, the jury were allowed to find that a corner which in the deed read "east" of a certain creek should have been written "west." Here the real contention was over the location of the land, and the jury upon evidence and on a proper charge have found the issue for the plaintiffs.

No error.