### MARY BYRD ET AL. v. CAROLINA SPRUCE COMPANY.

(Filed 15 December, 1915.)

**1. Deeds and Conveyances—Course—Natural Boundaries.**

Where there is a call in the description to a given boundary in a conveyance of land, which is at variance with the course specified therein, the natural object will control the course, it being the evident intent of the parties that the line should be thus established, and not that a mere word, in which a mistake is more likely to occur, should control.

**2. Same—Evidence.**

Where the controversy involving title to lands is over the description of a boundary given in a deed, to wit: "Southwesterly course (along the top of a ridge) along the various windings so as to include all of the head-waters of B. Creek to his own line at Grassy Knob at the right-hand fork of B. Creek," and it is shown that the line existing between former owners had been recognized as following the "top of the ridge," and called for to Celo Mountain, thence to Grassy Knob, the southwesterly course, which would be in a straight line to "Grassy Knob," would not control, but would give way to the defined line following the various courses of the ridge, first to Celo and then to Grassy Knob.

**3. Deeds and Conveyances—Evidence—Boundaries—Declarations.**

Evidence of declarations of former owners as to the boundary line in dispute, being a marked and defined course between natural objects on the top of a ridge, when made forty years ago and before the controversy over the line arose, is sufficient under our authorities, and, where the evidence is sufficiently remote, declarations of shorter duration may be admitted in corroboration. *Sullivan v. Blount,* 165 N. C., 11, cited and applied.

**4. Evidence—Declarations—Lands—Possession—Interests.**

The rule of evidence making competent declarations as to the boundary of the owner of lands in possession, against his interest, applies to one claiming the lands under him.

**5. Removal of Causes—Transfer of Causes—Fair Trial—Court's Discretion—Appeal and Error.**

A motion to transfer a cause from one county to another in the interest of justice is addressed to the sound discretion of the trial judge, and is not reviewable on appeal.

APPEAL by defendant from *Harding, J.,* at August Term, 1915, of YANCEY.

Action to recover land. It is admitted that the plaintiffs and the defendant claim under the same party, and that the plaintiffs have the older title from the common source. The plaintiffs, other than J. R. Penland, are the heirs at law of Garrett D. Ray, and the defendant is the grantee of Harold Johnson and others, heirs of R. B. Johnson, under a deed executed in 1910, which calls for the Ray line.

The description in the deed under which the plaintiffs claim is as follows:

"Beginning on the N. W. corner of his (James Ray's) 100-acre tract, a Spanish and bunch of sugar trees which he has a State grant for on the west side of Bowlin's Creek, and running east 100 poles to a poplar; then along said eastwardly course the Hurricane or Black Mountain Ridge *to the top of said ridge,* a southwardly course along *the top* of said ridge to a stack of rocks on the Big Knob; thence an eastwardly course along *the top* of the ridge to the jumping off place at the head of Ailer's Creek, waters of Toe River; *then a southwesterly course along the various windings so as to include all the headwaters of Bowlin's Creek to his own line at Grassy Knob, at the right-hand fork of Bowlin's Creek;* then a north course along his line and Bowlin's Creek to the line of 200-acre tract sold J. Wheeler; then around with Wheeler's line to James Ray to the beginning corner of his 100-acre survey to a chestnut; then to the beginning."

There is no dispute as to the location of this description up to the line leaving the Jumping Off Place, and the whole controversy between the parties is as to the true location of this line, which reads in the description as follows: "Then a southwesterly course along the various windings so as to include all the headwaters of Bowlin's Creek to his own line at Grassy Knob, at the right-hand fork of Bowlin's Creek."

The plaintiffs contend that the words "various windings" refer to the windings of the ridge, and that in order to include all the headwaters of Bowlin's Creek the line must be run a southeasterly direction with a ridge to Celo Mountain, and then westwardly with a ridge to Grassy Knob, and the defendant contends that "various windings" refer to Bowlin's Creek and that the line must be run substantially straight a southwest course to Grassy Knob.

The plaintiffs introduced several witnesses who testified that there was a general reputation existing, some said 40 years and others 25, 30 and 35 years, when there was no controversy that the Ray line ran with the

ridge from Jumping Off Place to Celo, and then with the ridge to Grassy Knob. The defendant excepted.

The plaintiffs also introduced evidence tending to prove that more than twenty years ago R. B. Johnson built a fence and cut out a road along the ridge from Grassy Knob to Celo, and that he then said the top of the ridge was the line between him and Ray; that there was a mica mine on the ridge, principally on the south side of the ridge, and that Johnson offered to lease it to one McMahon on the south side, but that he would not lease on the north side, as that was the Ray boundary. The defendant objected to the declarations of Johnson. Also that a survey was made before the deed was executed to the defendant, at which representatives of the defendant were present, and that on this survey Harold Johnson stated that the Ray line ran along the ridge from Celo to Grassy Knob. The defendant excepted.

Also that there was a continuous ridge, although called by different names, from Jumping Off Place to Celo, and then to Grassy Knob; that most of the large timber had been cut along the ridge, but that between Jumping Off Place and Celo there were three marked trees, a cherry, a locust, and a birch; that Bowlin's Creek had three principal prongs, and that while the right-hand prong was at Grassy Knob, the headwaters of the other prongs were near Celo, and that it was necessary to run to Celo to include the headwaters of Bowlin's Creek.

The plaintiffs also introduced the record of a former action between R. B. Johnson and G. D. Ray, which was tried in McDowell County and taken by appeal to the Supreme Court, and is reported in 72 N. C., 273, Pearson, C. J., writing the opinion, relying upon the record as an estoppel and insisting that if it is not an estoppel the opinion of the Court is a judicial construction that the line in controversy must run as they contend.

The defendant excepted "to the court permitting,. over defendant's objection, plaintiffs' counsel, in argument to jury, to, tell the jury that the line in dispute had been passed upon and settled by the Supreme Court in Johnson v. Ray, reported in 72 N. C., 273, by one of the most illustrious judges who ever adorned the bench of any court in the world, and to read that opinion and to argue that the line was fixed to run up to top of Step Rock Ridge to Celo, and then along the top of Grassy Knob to James Ray's line at Grassy Knob, at the right-hand fork of Bowlin's Creek."

The court charged the jury that the record in the former action was not an estoppel, as no final judgment had been introduced, and instructed the jury to answer the fifth issue "No."

There are several exceptions to the statement of the contentions of the parties in the charge, but these depend on the admissibility of the evidence objected to.

The defendant also excepted to the refusal of his Honor to remove the action from Yancey County, contending that it could not have a fair trial in that county on account of the wide and influential connections of the plaintiffs.

The location of the line was submitted to the jury as an issue of fact, and his Honor instructed the jury that they could not depart from a "southwesterly course" from Jumping Off Place, except in so far as it was necessary to include the headwaters of Bowlin's Creek.

The jury returned the following verdict:

1. Where is the line which is called for in the description in the complaint after reaching the "Jumping Off Place" at the head of Ailer's Creek as follows, "Then a southwesterly course along the various windings so as to include all the headwaters of Bowlin's Creek to James Ray's line at Grassy Knob at the right-hand fork of Bowlin's Creek"? A. With the main height of the ridge to Celo; thence the main height of the ridge to Grassy Knob.

2. Are the plaintiffs the owners of the land described in the complaint or any part thereof? A. Yes.

3. Has defendant trespassed upon the lands of plaintiffs, as alleged? A. Yes.

4. What damage, if any, are plaintiffs entitled to recover of defendant? A. None.

5. Is defendant estopped from claiming title to the lands in dispute by the judgment in *Johnson v. Ray,* as alleged in the complaint? A. No.

Judgment was entered upon the verdict in favor of the plaintiffs and the defendant appealed.

*A. Hall Johnston, Charles Hutchins, J. Bis Ray, and Hudgins & Watson for plaintiffs.*
*Pless & Winborne for defendant.*

ALLEN, J., after stating the case: The report of the former action between R. B. Johnson, under whom the defendant claims, and G. D. Ray, under whom the plaintiffs claim, contained in *Johnson v. Ray,* 72 N. C., 273, indicates very clearly that the location of the line now in controversy was then established by judgment in favor of the contention of the plaintiffs in this action, but we will not rest our decision upon this ground, as the issues and judgment are not before us, and if no weight is given to the proceedings in the former action, either as an estoppel or as a judicial construction, determining the location of the line as matter of law, the evidence is fully sufficient to sustain the verdict, and the line has been located correctly and in accordance with law.

It is probable there would be no controversy between the parties but for the course in the disputed call from Jumping Off Place being

"southwesterly," which, by an approximately straight line, would go to Grassy Knob, leaving the land in controversy outside of the plaintiffs' boundaries, while the line as contended for by the plaintiffs runs, first, a southeasterly course to Celo, and then westwardly to Grassy Knob; but while the course given in a description is important and frequently controlling, as was said by *Battle, J.,* in *Cooper v. White,* 46 N. C., 390: "It is now well settled that a mistake in the course or distance contained in the calls of a deed shall not be permitted to disappoint the intent of the parties, if that intent appear, and if the means of correcting the mistake are furnished, either by a more certain description in the same deed or by reference to another deed containing a more certain description. *Campbell v. McArthur,* 9 N. C., 33; *Ritter v. Barrett,* 20 N. C., 266."

The principle was first declared in *Person v. Rountree,* 2 N. C., 378, and has been followed in numerous cases, including *Houser v. Belton,* 32 N. C., 358; *Mizell v. Simmons,* 79 N. C., 191; *Powers v. Baker,* 152 N. C., 719.

In *Houser v. Belton, supra,* the description in the deed under which the plaintiff claimed was "Beginning at a white oak on the *east side of Loven's Creek;* thence south 55 chains to a post oak; thence east 100 chains to a white oak; thence north 55 chains to a white oak; thence to the beginning, containing 550 acres," and the plaintiff was permitted to prove that the white oak was on the west side of the creek, the court saying, "The question is simply whether a party is at liberty to show, by the kind of proof offered in this case, that there was a mistake in using the word '*east,*' instead of the word '*west.*' It is not a question between a marked tree and a natural boundary, but between a marked tree and a mere *word.* When a creek is called for as a boundary, it will control course and distance, and even marked lines and corners, because it is permanent and fixed, and a thing about which there can be no mistake. It is a natural boundary. Marked lines and corners control course and distance, because a mistake is less apt to be committed in reference to the former than the latter. Indeed, the latter is considered as the most uncertain kind of description, for it is very easy to make a mistake in setting down the course and distance, when transcribing from the field book or copying from the grant or some prior deed, or a mistake may occur in making the survey, by losing a stick, as to distance, or making a wrong entry as to course. For these reasons, when there is a discrepancy between course and distance and the other descriptions, the former is made to give way. All the reasons for making course give way to a natural boundary, or to the lines of another tract, or to marked lines and corners, apply with full force to the present question. The deed describes the beginning corner as being on the

east side of the creek; the proof shows the corner tree to be on the west side. The marked tree must control, because there is less liability to mistake about it than in the use of one word for another, and the discrepancy shows there must be a mistake in the one or the other."

If, then, the course given from Jumping Off Place "southwesterly" is not determinative, and if, notwithstanding this call, it was permissible for the plaintiffs to prove the true location of the line, although along a different course, is the evidence offered for that purpose competent?

The evidence of general reputation as to the location of the line meets all the requirements of the law, which are stated in *Sullivan v. Blount*, 165 N. C., 11, to be that "(1) The reputation had its origin at a time comparatively remote, and (2) existed before the controversy, and (3) attached itself to some monument of boundary, or natural object, or is supported by evidence of occupation and acquiescence tending to give the land some fixed or definite location. *Tate v. Southard*, 8 N. C., 45; *Dobson v. Finley*, 53 N. C., 496; *Yow v. Hamilton*, 136 N. C., 357; *Hemphill v. Hemphill*, 138 N. C., 504; *Lamb v. Copeland*, 158 N. C., 138."

Some of the evidence showed the reputation to have existed for forty years, and when there was no controversy, and, if so, evidence of reputation for a shorter period was competent in corroboration (*Ricks v. Woodard*, 159 N. C., 648), and the reputation attached itself to a natural object, the top of a ridge, along a line a part of which was marked, and it was shown that R. B. Johnson, under whom the defendant claims, held possession up to this line.

The declarations of R. B. Johnson and of Harold Johnson were also properly admitted because made before they had parted with their title and against interest. *Guy v. Hall*, 7 N. C., 150; *Satterwhite v. Hicks*, 44 N. C., 107; *Headen v. Womack*, 88 N. C., 468; *MaGee v. Blankenship*, 95 N. C., 563; *Ellis v. Harris*, 106 N. C., 395; *Shaffer v. Gaynor*, 117 N. C., 15.

The Court said, in the first of these cases: "The declarations or confessions of the person making them are evidence against such person and all claiming under him by a subsequent title, and for the plainest reasons. Truth is the object of all trials, and a person interested to declare the contrary is not supposed to make a statement less favorable to himself than the truth will warrant; at least there is no danger of overleaping the bounds of truth as against the party making the declarations. It is, therefore, evidence *against* him, and his subsequent purchaser stands in his situation; for he cannot better his title by transferring it to another, or thereby affect the rights of those who have an interest in his confessions"; and, in the last, "The declarations of parties to suits are always admissible evidence against, though not for, them.

*McCrainey v. Clark,* 4 N. C., 658 (698); *McDonald v. Carson,* 95 N. C., 377; *Gidney v. Moore,* 86 N. C., 484; *Avent v. Arrington,* 105 N. C., 377.

If the declarations of Carrow would have been competent against him as plaintiff in this action, it would be competent under the general rule applicable to all classes of cases against the plaintiff, who claims through him. *May v. Gentry,* 20 N. C., 249; *Woodley v. Hassell,* 94 N. C., 157; *Braswell v. Gay,* 75 N. C., 515."

The motion to remove the action for trial to another county in the interest of justice was addressed to the discretion of the court and is not reviewable. *Garrett v. Bear,* 144 N. C., 24. Nor do we find any error in the refusal of his Honor to stop counsel in their argument to the jury. A similar question was raised and ruled against the contention of the defendant in *Horah v. Knox,* 87 N. C., 487; but if the objection had been otherwise tenable the effect of the argument was practically destroyed by the subsequent instruction to the jury to answer the fifth issue in favor of the defendant. At the time the argument was made the proceedings in the former action were before the jury, and counsel were doing no more than exercising the right to argue the law and the fact to the jury.

We have considered the appeal without reference to the former action, but the plaintiffs may well contend that the line in controversy has been construed as matter of law to run with the ridge, because *Pearson, C. J.,* said on the former appeal in reference to the same line: "His Honor might also have charged that the general description, 'so as to exclude (in the original opinion the word is included) the headwaters of Bowlin's Creek,' made it necessary to follow the ridge." *Johnson v. Ray,* 72 N. C., 273. Three calls in the plaintiff's deed before the line reached Jumping Off Place were with the top of the ridge, and the line in dispute runs "along the various windings." Windings of what? Naturally windings of the ridge and not a straight line.

We have carefully considered the record, and find

No error.